55 P.3d 884

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Larry Albert HARMS, Jr., Defendant–Respondent.**

No. 27213.

Court of Appeals of Idaho.

Sept. 17, 2002.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Michael J. Wood, Twin Falls, for respondent.

## SUBSTITUTE OPINION

## THE COURT'S PRIOR OPINION DATED JULY 2, 2002, IS HEREBY WITHDRAWN

PERRY, Chief Judge.

The State of Idaho appeals from the district court's order granting Larry Albert Harms Jr.'s motion to suppress evidence. The state contends that the district court erred when it concluded that a probation officer's verbal request that Harms sign a property receipt constituted a custodial interrogation. We affirm.

## I.

## BACKGROUND

Police were executing a search warrant at Harms' home in an unrelated case when they observed two firearms in plain view. Officers were aware that Harms was on felony probation and therefore knew it was unlawful for him to possess firearms. Because the firearms were not authorized as property to be seized under the warrant, officers contacted Harms' probation officer. The probation officer arrived at the home and conducted a probation search, ultimately seizing a number of firearms.

Officers arrested Harms in connection with the unrelated case and transported him to the county jail to interview him. After consulting his attorney, Harms invoked his right to remain silent in the unrelated case. Interrogation in that case ceased and Harms was placed in jail. The next day, Harms' probation officer approached Harms in his cell and asked him to sign a "Property Report/Receipt Form" listing the firearms taken from Harms' home. Harms initially refused to sign the receipt. The probation officer then told Harms that he was required to sign the receipt on the line entitled "Owner's Signature Receiving Property." Harms objected to language on the receipt indicating that he was receiving the property. After the probation officer lined through the words "Receiving Property," Harms signed on the line now entitled "Owner's Signature" with the notation "UD," for "under duress." Harms also commented that he was surprised the guns were found in his house because they were supposed to be in a van.

Harms was charged with being a convicted felon in unlawful possession of a firearm. I.C. § 18–3316. Harms filed a motion to suppress his signature on the property receipt and his statement that the guns were supposed to be in the van. Harms argued that he had previously invoked his right to remain silent under *Miranda*[1] and that the probation officer's demand thereafter to sign the property receipt constituted custodial interrogation, in violation of his rights. The district granted the motion and suppressed both Harms' signature and his statement that the guns were supposed to be in the van. The state appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credi-

---

**1.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

bility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## ANALYSIS

On appeal, the state does not contest the district court's factual findings, but instead argues that the district court erred when it concluded that *Miranda* applied to the probation officer's request. The state asserts that the probation officer's request fell within a "routine booking exception" to *Miranda.* The state also contends that the district court erred in concluding that Harms' statement should be suppressed because, even if the probation officer's request constituted custodial interrogation, the request did not seek to elicit a verbal response and therefore Harms' comment was spontaneous and voluntary.

### A. Signature on Property Invoice

 *Miranda* provides that, in the context of a criminal case, the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. *Miranda's* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 307–08 (1980); *State v. Frank,* 133 Idaho 364, 370, 986 P.2d 1030, 1036 (Ct.App.1999). The term "functional equivalent" refers to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *See Innis,* 446 U.S. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308, *Frank,* 133 Idaho at 370, 986 P.2d at 1036. The term "incriminating response" refers to any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce. *Innis,* 446 U.S. at 301 n. 5, 100 S.Ct. at 1690 n. 5, 64 L.Ed.2d at 308 n.5. If the individual indicates in any manner, at any time prior to or during questioning, that he or she wishes to remain silent, the interrogation must cease. *Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 722–23, *State v. Rhoades,* 121 Idaho 63, 74, 822 P.2d 960, 971 (1991).

In this case, the state argues that the request fell within an exception to *Miranda.* The state directs us to a number of cases which provide that there is a "routine booking question" exception which exempts from *Miranda's* coverage questions asked to secure the biographical data necessary to complete the booking process. *See Pennsylvania v. Muniz* 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528, 552 (1990) (suspect questioned regarding his name, address, height, weight, eye color, date of birth and current age); *United States v. Sweeting,* 933 F.2d 962, 965 (11th Cir.1991) (suspect questioned regarding his address); *United States v. Horton,* 873 F.2d 180, 181 (8th Cir.1989) (suspect questioned regarding his name); *United States v. Gotchis,* 803 F.2d 74, 79 (2nd Cir.1986) (suspect questioned regarding his employment); *United States v. Sims,* 719 F.2d 375, 378 (11th Cir.1983) (suspect questioned regarding his address and phone number).

 The application of the routine booking question exception is a matter of first impression in this state. Upon our review of the facts in this case and the applicable case law from other jurisdictions, we conclude that this case is easily distinguishable from the previously cited cases. The above-mentioned cases each involve a suspect being questioned *at the time he or she was booked into jail or at the time he or she was first encountered by police* regarding basic background information such as a name, an address, a phone number, or a place of employment. However, the probation officer in this case was not seeking background information when he required Harms to sign the property invoice on a line stating "Owner's Signature Receiving Property." Instead, the probation officer approached Harms in his jail

cell, *one day after he was arrested and booked into the jail,* consulted an attorney and invoked his right to remain silent.

Moreover, the probation officer made the request knowing that the prosecuting attorney was preparing to charge Harms with being a felon in unlawful possession of a firearm—*information which the probation officer never shared with Harms.* Testimony at the suppression hearing revealed that Harms initially refused to sign the form, objecting to the language used. After the probation officer told Harms he was required to sign, and after the probation officer lined through some language, Harms signed the form indicating that he was only doing so under duress.

Under these circumstances the probation officer should have known that his request was reasonably likely to elicit an incriminating response. The probation officer's request essentially demanded that Harms acknowledge in writing that he owned or at least controlled the weapons that would form the basis for the forthcoming charge. Therefore, we conclude that the district court did not err in concluding that the probation officer's demand constituted custodial interrogation as defined in *Miranda* and *Innis.* Because the probation officer violated Harms' rights by requiring Harms to sign the property receipt without advising him of his *Miranda* warnings, Harms' signature on the property receipt was properly suppressed by the district court.

## B. Harms' Statement

We next address Harms' statement that he thought the guns were in the van. Harms' statement was made after the probation officer violated Harms' *Miranda* rights by demanding his signature on the property receipt without administering the requisite warnings. The state asserts that Harms' statement was not made in response to an interrogation but, rather, was a volunteered statement that should not have been suppressed. In addressing the state's argument, we examine whether Harms' statement was inadmissible pursuant to the fruit of the poisonous tree doctrine.

In two seminal cases discussing whether the fruit of the poisonous tree doctrine applies to bar evidence obtained as a result of a *Miranda* violation, the United States Supreme Court has held that the fruit of the poisonous tree doctrine is ordinarily inapplicable to *Miranda* violations. *See generally Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In *Tucker,* the defendant was arrested and interrogated concerning the rape and assault of the defendant's neighbor. Prior to interrogation, police officers inquired whether the defendant knew for what crime he had been arrested, whether he wanted an attorney, and whether he understood his constitutional rights. The police further advised him that any statements he made could be used against him in court but the defendant was not informed that he would be furnished an attorney if he could not afford one. During the ensuing interrogation, the defendant furnished the name of an alibi witness. The police questioned the witness but rather than providing an alibi for the defendant, the witness supplied the police with information inculpating the defendant.

At trial, the defendant sought to suppress the witness's testimony under the fruit of the poisonous tree doctrine. The defendant asserted that the witness's testimony should be excluded because the witness's identity was revealed during an interrogation which was not preceded by complete *Miranda* warnings. On appeal, the Court noted that the *Miranda* warnings were not constitutional rights themselves but were instead measures to insure that the right against compulsory self-incrimination was protected. The Court determined that the police conduct at issue did not actually violate the defendant's constitutional rights against compulsory self-incrimination but, rather, inadvertently violated the procedural rules set forth in *Miranda.* Because there was no violation of the defendant's constitutional rights under the Fifth Amendment, the Court held that the fruit of the poisonous tree doctrine was inapplicable. The Court further held that the purposes of the exclusionary rule—deterrence and protection of the courts from reliance on untrustworthy evidence—would not be served

by excluding the alibi witness's testimony because the police officers who interrogated the defendant did not coerce the defendant into making a statement nor did they subject the alibi witness to custodial pressures. The Court thus held that, although the defendant's own statements must be suppressed pursuant to *Miranda*, the fruit of those statements—the alibi witness's testimony—need not be excluded.

In *Elstad*, the defendant was arrested and questioned concerning his involvement in a burglary at a neighbor's home without being given *Miranda* warnings. The defendant made incriminating statements. The defendant was again questioned concerning his involvement in the burglary after being advised of his *Miranda* rights. The defendant waived his rights and gave a full statement concerning his involvement in the burglary, which was later transcribed and signed by the defendant. The defendant sought to suppress his second statement, arguing that his subsequent confession was tainted by his first unwarned statement.

On appeal, the Court stated that the defendant's contention that his confession was tainted by the earlier failure of the police to provide *Miranda* warnings and must be excluded as fruit of the poisonous tree assumed the existence of a constitutional violation. However, the Court reiterated that the *Miranda* warnings were not themselves rights protected under the constitution but were simply prophylactic standards designed to safeguard the Fifth Amendment privilege against compelled self-incrimination. The Court stated that, unlike the Fourth Amendment exclusionary rule, the *Miranda* exclusionary rule may be triggered even in the absence of a Fifth Amendment violation. The Court also emphasized that the Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony. The Court indicated that the failure to administer *Miranda* warnings created a *presumption* of compulsion but did not *constitute* compulsion. The Court declared that it was an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, *unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will*, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Thus, the admissibility of any subsequent statement should turn on whether it is knowingly and voluntarily made. Accordingly, the Court held that where the unwarned statement is voluntary, and not a product of inherently coercive police tactics or methods offensive to due process, there is no Fifth Amendment violation and the fruits of the statement may be admitted in the state's case in chief.[2]

According to the holdings in *Tucker* and *Elstad*, the fruit of the poisonous tree doctrine is generally inapplicable to exclude evidence obtained as a result of a violation of a defendant's *Miranda* rights. However, contrary to the state's assertion on appeal, the Court's opinions in those cases do not preclude the doctrine from being applicable in every circumstance. Rather, as those cases indicate, the fruit of the poisonous tree doctrine should be applied in the context of a *Miranda* violation where a defendant's unwarned statement was involuntary. Our task in the case before us, then, is to determine whether Harms' first unwarned statement—the signing of the property receipt—was involuntary for purposes of the Fifth Amendment. If it was, then the fruit of the poison-

2. An issue has arisen in several recent cases concerning the continued vitality of *Elstad* and *Tucker* in light of the Court's opinion in *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). *See United States v. Sterling*, 283 F.3d 216, 218–19 (4th Cir.2002); *United States v. DeSumma*, 272 F.3d 176, 180–81 (3rd Cir.2001); *United States v. Orso*, 266 F.3d 1030, 1034 n. 3 (9th Cir.2001); *State v. Walton*, 41 S.W.3d 75, 88–89 (Tenn.2001). In *Dickerson*, the Court held that the opinion in *Miranda* announced a constitutional rule that Congress was prohibited from superseding by statute. In each of the aforementioned cases, it was suggested that because the Court pronounced *Miranda* a constitutional decision, it followed that a violation of *Miranda* was a constitutional violation and the fruit of the poisonous tree doctrine should be applicable. The courts in each of those cases declined to extend the *Dickerson* holding so far, noting that the language in *Dickerson* appeared to uphold the decisions in *Tucker* and *Elstad*.

ous tree doctrine applies to exclude Harms' statement that he thought the guns were in the van.

 To determine the voluntariness of a statement, we examine the totality of the circumstances to ascertain whether the defendant's will was overborne by police coercion when the statement was made. *See Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302, 315–16 (1991); *State v. Tapp*, 136 Idaho 354, 364, 33 P.3d 828, 838 (Ct.App.2001). Coercive police conduct is a necessary predicate to finding that a statement was involuntary within the meaning of due process. *Tapp*, 136 Idaho at 364, 33 P.3d at 838. Here, the evidence in the record reflects that the probation officer approached Harms after he was arrested and booked into jail on the unrelated case, consulted an attorney, and invoked his right to remain silent. At the time, the probation officer knew that charges were going to be filed in relation to the firearms seized at Harms' home but did not share that information with Harms. The district court found that the probation officer informed Harms that he was "required" to sign the property receipt. In making this finding, the district court evidently accepted Harms' testimony that, after his initial refusal to sign, the probation officer told Harms that he "had no choice but to sign it." After the probation officer lined through the words "Receiving Property," Harms signed the property receipt and indicated that he was signing it under duress.

Upon review of the totality of the circumstances presented in this case, we conclude that Harms' unwarned signing of the property receipt resulted from coercive police tactics and was not voluntary. Under these circumstances, we conclude that the fruit of the poisonous tree doctrine did apply to prohibit the state from admitting Harms' statement that he thought the guns were in the van at trial. Therefore, we hold that the district court did not err by suppressing Harms' statement.

## IV.

### CONCLUSION

The probation officer's demand that Harms sign the property receipt was some-

thing that the officer should have reasonably known was likely to elicit an incriminating response and, therefore, constituted custodial interrogation under *Miranda*. Harms' statement following the request was tainted by the illegality of the demand. For these reasons, the district court did not err in granting Harms' motion to suppress his signature and his statement. The order of the district court granting the motion to suppress is affirmed.

Judge LANSING and Judge Pro Tem WILPER concur.