152 P.3d 645

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Francisco GARCIA, Defendant–Appellant.**

**No. 32191.**

Court of Appeals of Idaho.

Nov. 14, 2006.

Review Denied Feb. 20, 2007.

Nevin, Benjamin McKay, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

WALTERS, Judge Pro Tem.

Francisco Garcia appeals his judgment of conviction for trafficking in marijuana. Specifically, Garcia challenges the district court's denial of his motion to suppress. We affirm.

## I.

### FACTS AND PROCEDURE

In February 2005, having received a report that a group of men had been meeting during the noon hour at a campground in Boise and smoking marijuana and drinking alcohol, the Boise Police Department proceeded to investigate. Shortly before 12:00 p.m. on February 14, Officer Kevin Holtry arrived on the scene in plain clothes in an unmarked car and watched as seven men in several vehicles arrived at the campground. One of the men was Garcia who came in a silver pickup truck with one male passenger. The men went to a convenience store nearby and returned to the campground where they congregated in the picnic area. As they began to eat and drink beer, Officer Holtry observed Garcia smoking what he believed to be a marijuana cigarette due to the manner in which Garcia smoked it and because Garcia "would hand it to another person who would take a couple drags off [it] and then hand[ ] it back."

After alerting other officers waiting nearby in marked patrol cars, Officer Holtry

walked toward the men and awaited the arrival of back-up. The patrol cars drove up to the picnic area and two armed officers joined Officer Holtry in identifying themselves when they confronted Garcia and the group of men. As the officers approached, they communicated to the men that the officers knew the men were smoking marijuana and if the men handed over all the marijuana they had, they would be given citations and released but, if not, they would be arrested. One of the men immediately complied and turned over marijuana he had on his person.

Officer Holtry then requested that Garcia submit to a pat-down search to which Garcia agreed. Garcia denied having any marijuana on him, and no drugs were found during the pat-down. Garcia, however, did admit to having brought a marijuana cigarette to the location and smoking it. When questioned regarding the truck Officer Holtry had seen Garcia drive to the scene, Garcia initially denied that the truck belonged to him, but eventually admitted ownership after the officers investigated the registration. Garcia testified that during the officers' investigation he became concerned with the amount of time passing (approximately thirty minutes) as he and his co-workers were expected back at work.

Officer Holtry eventually asked Garcia for permission to search his truck. Garcia answered in the affirmative. Without requesting that Garcia complete a consent-to-search form or reading him his Miranda[1] rights, Officer Holtry opened the door of the truck. He was met with the odor of green marijuana and saw a large amount of marijuana flakes throughout the console area. In the course of the search, the officer discovered a paper bag on the floorboard behind the passenger seat containing a plastic bag with nearly two pounds of marijuana inside. Garcia was promptly placed under arrest and ultimately charged with trafficking in marijuana in violation of I.C. § 37–2732B(a)(1).

Garcia filed a motion to suppress the entirety of the testimonial and physical evidence obtained by the officers in the incident. Following a hearing, the district court denied the motion to suppress the physical evidence,

but granted the motion with regard to Garcia's statements as having been elicited in violation of Miranda. Garcia responded by filing a motion to reconsider the order, which was denied. He then entered a conditional guilty plea reserving the right to appeal the denial of his motion to suppress and motion to reconsider. Garcia was sentenced to eight years with two years fixed and ordered to pay a fine and restitution. This appeal followed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draft factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution, as well as article I, § 17 of the Idaho Constitution, prohibit unreasonable searches. While a warrantless search is presumptively unreasonable, it may still be permissible if it falls within an established exception to the warrant requirement or is otherwise reasonable under the circumstances presented. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 343 (1993); *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Greene*, 140 Idaho 605, 607, 97 P.3d 472, 474 (Ct.App.2004); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

1993). Garcia contends the district court erred in denying his motion to suppress, arguing that none of the exceptions to the warrant requirement found satisfied by the district court were met. Specifically, he submits his consent to the search was coerced, the evidence was not discovered during a valid search incident to arrest, and an inventory search was not appropriate in this instance. Finally, he argues that the evidence was suppressible as the "fruit" of a *Miranda* violation pursuant to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ A search conducted with consent that was freely given is an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct.App.2002). It falls to the state to prove, by a preponderance of the evidence, that consent was voluntary as opposed to being the result of duress or coercion, direct or implied. *Schneckloth*, 412 U.S. at 221, 93 S.Ct. at 2044, 36 L.Ed.2d at 859; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct.App.2006); *Dominguez*, 137 Idaho at 683, 52 P.3d at 327; *State v. Fleenor*, 133 Idaho 552, 554, 989 P.2d 784, 786 (Ct.App.1999). A voluntary decision is "the product of an essentially free and unconstrained choice by its maker," *Schneckloth*, 412 U.S. at 225, 93 S.Ct. at 2047, 36 L.Ed.2d at 862, while an individual's consent is involuntary "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* To determine whether a subject's will was overborne in a particular case, the court must assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. Accordingly, whether consent was granted voluntarily, or was the product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting for subtly coercive police questions and the possibly vulnerable subjective state of the party from whom consent is elicited. *Id.* at 229, 93 S.Ct. at 2048-49, 36 L.Ed.2d at 864; *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *Jaborra*, 143 Idaho at 97, 137 P.3d at 484; *Dominguez*, 137 Idaho at 683, 52 P.3d at 327.

■ A determination of voluntariness is not dependent "on the presence or the absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. Factors to be considered include whether there were numerous officers involved in the confrontation, *Castellon v. United States*, 864 A.2d 141, 155 (D.C.2004); *United States v. Jones*, 846 F.2d 358, 361 (6th Cir.1988); the location and conditions of the consent, including whether it was at night, *United States v. Mapp*, 476 F.2d 67, 77–78 (2d Cir.1973); whether the police retained the individual's identification, *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir.1984); whether the individual was free to leave, *Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354-55 (1996); *Chemaly*, 741 F.2d at 1353; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002); and whether the individual knew of his right to refuse consent, *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2058–59, 36 L.Ed.2d at 875; *Chemaly*, 741 F.2d at 1353; *State v. Jones*, 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct.App. 1995). Although the presence of multiple officers does not, standing alone, establish coercion, and there is no requirement that police inform the individual he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when assessing the totality of the circumstances. *See Robinette*, 519 U.S. at 39–40, 117 S.Ct. at 421, 136 L.Ed.2d at 354-55; *Schneckloth*, 412 U.S. at 248, 93 S.Ct. at 2058, 36 L.Ed.2d at 875; *Jones*, 846 F.2d at 361; *Chemaly*, 741 F.2d at 1353; *Castellon*, 864 A.2d at 155; *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465; *Jones*, 126 Idaho at 793, 890 P.2d at 1216.

■ Importantly, the trial court is the proper forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233, 93 S.Ct. at 2050, 36 L.Ed.2d at 866. Even if the evidence is equivocal and somewhat in dispute, if the trial court's finding of fact is based on

reasonable inferences that may be drawn from the record, it will not be disturbed on appeal, *State v. Post*, 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), *overruled on other grounds by State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981), since our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct.App.1999). *See e.g., Jaborra*, 143 Idaho at 97, 137 P.3d at 484 (upholding the district court's finding of fact that consent was coerced as supported by substantial evidence and as not clearly erroneous).

█ Garcia initially argues the officer's statement shortly after confronting the group that if they handed over the marijuana the men would be cited and released, but if they did not, they would be arrested ("the statement") rendered Garcia's consent to search coerced, and thus ineffective. The district court disagreed and found Garcia's consent to search voluntary. The court reasoned:

> I can't find from the totality of the evidence presented here ... that there were any threats made to the defendant in this case other than ... "Turn over what you have, and we'll cite you," and to the effect that, "If you do not turn over what you have and if, in fact, you have drugs on you, then you're going to be subject to arrest."
>
> It was, I think, an accurate statement of the circumstances and the authority that the officers had. It doesn't rise to the level, though, of ... coercion as far as the subsequent search of the vehicle.

After determining the officer was truthful in informing Garcia that he and his companions could be arrested if they were found with drugs, and finding that Garcia's response to the officer's request was "unconditional" agreement, the court decided the statement alone did not render the consent coerced.

█ Initially, it should be noted that bowing to events, even if one is not happy about them, is not equivalent to being coerced. *United States v. Miller*, 589 F.2d 1117, 1132 n. 13 (1st Cir.1978). The voluntariness of consent is not impaired simply because one is faced with two unpleasant choices—which here, Garcia argues, was choosing between consenting to the search and allowing the marijuana in his truck to be discovered and not consenting and risking arrest of himself and his companions. In *State v. Abeyta*, 131 Idaho 704, 963 P.2d 387 (Ct.App.1998), this Court addressed the voluntariness of consent to search in light of police threats to obtain a search warrant. *Id.* at 708–09, 963 P.2d at 391–92,. There, the appellant's choice boiled down to consenting to a search or having his premises searched pursuant to a warrant—two unappealing options for one who knew incriminating evidence would be found. This Court found the threat of securing a search warrant "does not necessarily render consent involuntary, [although] it is clearly a significant factor in determining whether consent to search was freely and voluntarily given." *Id.* at 708–09, 963 P.2d at 391–92. In viewing the threat in light of all the circumstances, we concluded it was appropriate for officers to inform an individual of the police's ability and intent to seek a search warrant as long as they "did not *falsely* or *erroneously* state they had a legitimate right to search his residence." *Id.* at 709, 963 P.2d at 392. *Accord Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797, 802 (1968) (holding consent is coerced where obtained after an officer asserts he has a warrant when, in fact, he does not). Accordingly, we concluded the officer's threat to seek a search warrant was legitimate because, under the totality of the circumstances, the evidence gathered by the officer prior to the threat being vocalized provided requisite probable cause to support the acquisition of a search warrant. *Id. See also United States v. Agosto*, 502 F.2d 612, 614 (9th Cir.1974) (statement of officer's intention to obtain search warrant if consent was not given did not render consent *per se* involuntary).

█ Similarly, an officer's implied or explicit offer not to arrest a suspect if he "turns over what he has" is not coercive if it merely

780

informs the suspect of the officer's intention to do something that is within the officer's authority based on the circumstances. *See State v. Medenbach*, 48 Or.App. 133, 616 P.2d 543, 545 (1980) ("[T]he action of the officer in advising defendant that he would be arrested unless he agreed to take some field sobriety tests was not constitutionally objectionable coercion because the trooper then had probable cause to arrest defendant for driving under the influence. Therefore, the officer threatened 'only to do what the law permitted him to do.' "). Again, the district court in this case found the statement was in effect "Turn over what you have, and we'll cite you" and "If you do not turn over what you have and if, in fact, you have drugs on you, then you're going to be subject to arrest." Thus, an initial inquiry here is whether the officers had probable cause to actually effectuate an arrest.

▮ A peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the officer. I.C. § 19–603(1). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presump-

tion that such person is guilty. *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996); *State v. Gibson*, 141 Idaho 277, 282, 108 P.3d 424, 429 (Ct.App.2005). As the state pointed out in oral argument before this Court, the officers had, at the least, probable cause to arrest the suspects under the Uniform Controlled Substances Act, I.C. § 37–2732(a)(1)(B), which proscribes delivery of marijuana.[2] Thus, the statement was an informational communication regarding authority the officers actually possessed and did not *ipso facto* render Garcia's consent involuntary.[3] But, our analysis does not end there since a threat of arrest is only one factor among many to be considered in determining whether the circumstances surrounding Garcia's consent amounted to the type of coercion prohibited by the United States Supreme Court in *Schneckloth*.

▮ There were numerous factors pointing toward an atmosphere conducive to voluntary consent. First, the alleged threat was significantly attenuated from Garcia's consent to search the truck so as to decidedly diminish the existence of any causal link. According to eyewitness testimony, the state-

**2.** The Act defines "delivery" as "the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance...." I.C. § 37–2701(a)(g). Officer Holtry observed Garcia and others passing among themselves what he believed to be a marijuana cigarette due to the way in which they were smoking it. This fact combined with the initial report that a group of men had been meeting at the campground around noon and smoking marijuana gave the officers probable cause to, at their discretion, arrest the men involved for violation of I.C. § 37–2732(a)(1)(B).

**3.** In his brief, Garcia argues a threat that others will be arrested if the defendant does not consent has been "recognized as highly coercive." He asserts the officer's statement amounted to a threat to arrest his co-workers if he did not consent to a search of his truck. Garcia relies on several cases we conclude are distinguishable from the situation here. *United States v. Ivy*, 165 F.3d 397 (6th Cir.1998), *United States v. Crowder*, 62 F.3d 782 (6th Cir.1995), and *United States v. Bolin*, 514 F.2d 554 (7th Cir.1975) all concern the threatened arrest of an *innocent* third person. *See Ivy*, 165 F.3d at 403 ("*Crowder* establishes that a police officer's statement that he will arrest an *innocent* relative or intimate friend of a suspect if the suspect does not submit to a search

is an unacceptable means of obtaining consent." (Emphasis added.)). That situation is inapposite to the instant case where the officers had probable cause to believe all the men present were involved in illicit drug activity. The police had been told of a group of men who were engaging in drug use at the campground, and the police observed such activity by more than just Garcia. Thus, the officers did not threaten the arbitrary arrest of innocent persons if Garcia did not consent to the search; rather, the officers made a statement concerning the genuine authority possessed by the police regarding anyone found complicit in wrongdoing. *See State v. Schumacher*, 136 Idaho 509, 517, 37 P.3d 6, 14 (Ct. App.2001) ("It is true that threats to prosecute a defendant's loved one when there is no legitimate basis to do so may be coercive and can render a confession involuntary," but the threat regarding arrest of appellant's wife was not unjustified where there was evidence linking her to the marijuana cultivation.). *See also People v. LaDuke*, 206 A.D.2d 859, 860, 614 N.Y.S.2d 851 (N.Y.A.D.1994). ("It is not, however, necessarily an improper tactic for the police to capitalize on the 'reluctance [of a defendant] to involve his family in a pending investigation', especially where, as here, the police had a valid legal basis to carry out their threats to arrest defendant's wife and father." (Citations omitted.)).

ment concerning arrest was made immediately as the officers approached the group. It was not until after at least one of the men voluntarily gave up his concealed marijuana, Garcia and the others had consented and been subjected to pat down searches, Garcia admitted to transporting and smoking a marijuana cigarette at that location, the officers started issuing citations and running warrant checks, and Garcia was queried about, denied, and eventually admitted his ownership of the truck that an officer first asked for consent to search the vehicle. With the passage of time, and no evidence of a renewal of the alleged threatening tack taken by officers, the district court could properly conclude that the effect of a "threat" was lessened, making it less likely Garcia's "will was overborne and his capacity for self-determination critically impaired" by the statement. *Schneckloth,* 412, U.S. at 225–26, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. In addition, the statement was not directly linked to consent—*e.g.,* "consent or we will arrest you"—but was an independent request occurring, as noted above, significantly prior to the request for consent to search. *Cf. United States v. Ocheltree,* 622 F.2d 992, 994 (9th Cir.1980) (finding the officer essentially communicated to individual that unless he consented to search of his briefcase he would be retained in custody and not permitted to board his plane). The record also shows the officer's request for permission from Garcia to search the truck was unaccompanied by added pressure or repeated requests, and Garcia immediately replied with an unequivocal "yes" after admitting the truck was his. *Cf. City of Fargo v. Ellison,* 635 N.W.2d 151, 156 (N.D.2001) (in finding consent to search was coerced, the court noted the individual attempted to end the conversation twice but each time was thwarted by police). Finally, we note the encounter occurred in broad daylight, and while multiple officers were involved, this was not a case where the individual was severely outnumbered since Garcia was surrounded by fellow suspects.

Accordingly, we conclude the district court's finding that Garcia's consent was voluntary was based on a totality of the circumstances and supported by substantial evidence. In light of this, and given our deference to lower court's factual findings, we will not disturb the finding on appeal. Because we have upheld the constitutionality of the search on consent grounds, there is no need to discuss the validity of the district court's alternative bases of search incident to arrest or inventory search.

■ Finally, we address Garcia's contention that the evidence should be suppressed as the "fruit" of a *Miranda* violation. As noted earlier, the district court did suppress statements made by Garcia prior to receiving *Miranda* warnings, when during interrogation by the officers, Garcia admitted that he had been smoking marijuana and spoke about the results of the vehicle registration check. Garcia argues that, likewise, the physical items of evidence seized by the officers during the search of his truck should be suppressed because of the *Miranda* violation, although he acknowledges there is authority to the contrary. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

The United States Supreme Court recently addressed whether a failure to give a suspect *Miranda* warnings required suppression of the physical fruits of the suspect's unwarned but voluntary statements. Answering the question in the negative, the Court in *United States v. Patane,* 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), said:

[T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. And just as the Self–Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule articulated in such cases as *Wong Sun* does not apply.

*Patane,* 542 U.S. at 636–37, 124 S.Ct. at 2626, 159 L.Ed.2d at 674.

Thus it appears that the exclusionary rule may be applied where the un-*Mirandized* statement is an involuntary one, just as this Court held in *State v. Harms,* 137 Idaho 891, 55 P.3d 884 (Ct.App.2002). Here, however, because we have upheld the district court's conclusion that Garcia's consent to search his vehicle was voluntary and not the product of police coercion, the exclusionary rule does not apply. Consequently, we hold that the physical evidence obtained by the police upon searching Garcia's truck with his voluntary consent is not suppressible as fruit of the poisonous tree.

## IV.

## CONCLUSION

The district court did not err in denying Garcia's motion to suppress the physical evidence. The order denying Garcia's motion to suppress in that regard is sustained. The judgment of conviction and sentence imposed by the district court are affirmed.

Chief Judge PERRY, and Judge LANSING concur.

