**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40221**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 422 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 20, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BREE LEANN LAROSA, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Bree Leann Larosa appeals from the judgment of conviction entered upon her conditional guilty plea to possession of a controlled substance (methamphetamine). Specifically, Larosa argues the district court erred by denying her motion to suppress evidence. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

Officer Buhl, with the Coeur d'Alene Police Department, initiated a traffic stop of a car that he observed driving over the speed limit and failing to use a turn signal. The driver, Larosa, provided an Idaho identification card because, as she explained, her driver's license was suspended. Larosa was also unable to provide proof of insurance. While Officer Buhl talked to Larosa, he became suspicious that Larosa was under the influence of some substance because Larosa appeared nervous, was visibly shaking, had bloodshot eyes, and had sores on her

1

face--including some that were bleeding. Hence, Officer Buhl asked Larosa to step out of the vehicle and he proceeded to ask her questions to determine if she was under the influence. While he was questioning her, Larosa informed Officer Buhl that she had a syringe in her purse that she had used three days prior to inject methamphetamine. Larosa also talked to Officer Buhl about a child that had been removed from her home. Officer Buhl asked Larosa if he could search the car, Larosa consented, and Officer Buhl confiscated the syringe. Officer Buhl determined that Larosa was not under the influence and sent Larosa on her way without issuing her a citation or arresting her, but he indicated that he would await the results of testing of the syringe and may follow up with Larosa.

The next day, Officer Buhl and Officer Hanna went to Larosa's home at 11:45 p.m. to conduct a welfare check, in light of Larosa's comment the night before concerning the child that was removed from her home and a concern that there may be other children in the home. Officer Buhl went to the south door and Officer Hanna went to the north door of Larosa's residence. Larosa came to the south door.[1] Larosa opened the south door, and Officer Buhl, standing outside of the home, told Larosa why he was there and asked if he and another officer could come in. Larosa agreed. Officer Hanna made his way to where Officer Buhl was, and both officers entered the home. Inside the home, Officer Buhl saw a glass pipe that he recognized as a pipe used for marijuana sitting atop a dresser. Officer Buhl proceeded to ask Larosa if she had any other drugs and then asked if he could search the bedroom where the glass pipe was located, to which Larosa said he could search the room. Officer Buhl searched the room and located marijuana, cotton balls with methamphetamine on them, and other paraphernalia. According to Officer Buhl's testimony, at no time did Larosa withdraw her consent or tell him to stop searching.

Larosa was arrested, and after a preliminary hearing, an information was filed charging Larosa with possession of a controlled substance (methamphetamine), injury to children, possession of a controlled substance (marijuana), and possession of drug paraphernalia. Larosa

---

[1] The record reveals differing accounts from Officer Buhl on the events leading up to Larosa opening the south door. At one point, Officer Buhl testified that Officer Hanna had knocked on the north door; at another point, Officer Buhl testified that he had knocked on the south door. He also testified that Larosa opened the south door before he could knock on the door. Although this inconsistency exists, resolution of this detail does not alter our conclusion below.

2

filed a motion to suppress the evidence found as a result of the search of the bedroom, contending amongst other reasons that she did not give the officers consent to enter her home voluntarily. Following a hearing on the motion to suppress, the court issued an oral ruling denying the motion to suppress. Larosa then entered a conditional plea of guilty to possession of methamphetamine, Idaho Code § 37-2732(c), and reserved the right to appeal the denial of her motion to suppress.[2] Larosa appeals.

## II.

## STANDARD OF REVIEW

In reviewing an order denying a motion to suppress evidence, this Court applies a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court will accept the trial court's findings of fact unless they are clearly erroneous, but will freely review the trial court's application of constitutional principles to the facts found. *Id.* Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).

## III.

## ANALYSIS

Larosa argues the district court erred by denying her motion to suppress. Larosa contends her consent given to the officers to enter her home was not given voluntarily thereby invalidating the search of the bedroom. Consequently, Larosa asserts the district court should have suppressed the evidence found as a result of the search within her bedroom.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*,

---

[2] The remaining charges were dismissed.

3

124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The voluntariness of consent does not depend "on the presence or absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226. In *State v. Garcia*, 143 Idaho 774, 152 P.3d 645 (Ct. App. 2006), we identified five factors to consider: "whether there were numerous officers involved in the confrontation; the location and conditions of the consent, including whether it was at night; whether the police retained the individual's identification; whether the individual was free to leave; and whether the individual knew of his right to refuse consent." *Garcia*, 143 Idaho at 778, 152 P.3d at 649 (citations omitted). In addition, we noted that "[a]lthough the presence of multiple officers does not, standing alone, establish coercion, and there is no requirement that police inform the individual he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when assessing the totality of the circumstances." *Id.*

Larosa argues her consent was not given voluntarily because the officers visited her home at a late hour and arrived in two patrol cars, one officer went to the north door and one officer went to the south door, Officer Buhl had a gun on him, and Larosa recognized Officer Buhl as the officer from the traffic stop the previous evening. The State responds that the late arrival is minimally persuasive, the record contains no testimony that Larosa knew of the presence of Officer Hanna at the north door when she made contact with Officer Buhl, the presence of two officers is not overbearing to the point where a person would be coerced to consent, Officer Buhl never drew his weapon, and Larosa's previous encounter with Officer Buhl did not cause Larosa to feel intimidated or coerced.

We agree with the State's position. Although there were two officers who went to Larosa's house at a late hour, around 11:45 p.m., there is no indication that Larosa was aware of Officer Hanna when she opened the south door, nor does the record reveal that Larosa knew there were two police cars at the house. Further, even though Officer Buhl was armed, he testified that he did not draw his gun during the encounter at Larosa's home. Despite the fact Larosa interacted with Officer Buhl the night before during a traffic stop, there is no evidence in

4

the record that suggests Larosa felt coerced to allow the officers into the home based on her experience the night before. Indeed, the record reveals that Officer Buhl did not arrest or issue a citation to Larosa the night before, even though Larosa had committed traffic infractions, had a suspended driver's license, was unable to provide proof of insurance, and had admitted to Officer Buhl that she had a syringe in her purse that she had used to inject methamphetamine.

Considering the points raised by Larosa, and examining the totality of the circumstances, the record shows that the district court's determination that Larosa voluntarily consented to the officers' entry into her home is supported by substantial and competent evidence. Thus, the district court did not err by denying Larosa's motion to suppress the evidence found as a result of the search of the bedroom. Accordingly, we affirm Larosa's judgment of conviction for possession of a controlled substance.

Judge GRATTON and Judge MELANSON **CONCUR.**