137 P.3d 481

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Jake L. JABORRA, Defendant–Respondent.**

No. 31710.

Court of Appeals of Idaho.

May 31, 2006.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for appellant. Courtney E. Beebe argued.

Landeck, Westberg, Judge & Graham, Moscow, for respondent. John C. Judge argued.

LANSING, Judge.

The State appeals the district court's order suppressing evidence seized by police while conducting a search of a driver during a traffic stop. We affirm.

## I.

## BACKGROUND

Just after midnight on April 8, 2004, Jake Jaborra was pulled over by Deputy Douglas Anderson of the Latah County Sheriff's Office. Deputy Anderson initially became interested in Jaborra's vehicle because it was traveling below the speed limit, going forty-six miles per hour in a sixty-mile-per-hour zone. He followed Jaborra for several miles, still observing a slow speed and also noticing frequent braking. After a check with dispatch revealed that the vehicle's registration had expired, Deputy Anderson stopped Jaborra. When Anderson contacted Jaborra, he noticed that Jaborra moved slowly and deliberately but exhibited no odor of alcohol. Jaborra could not produce proof of current liability insurance, and the deputy decided to cite him for that infraction as well as the expired registration.

Back at his patrol car to write the citations, Deputy Anderson radioed Sergeant Phil Gray, a drug recognition expert, and requested his assistance. In the meantime, another officer, Corporal Sullivan arrived at the scene. Anderson recontacted Jaborra and asked him to accompany the officers to the rear of his vehicle to receive his citations. When asked if he had been drinking alcohol, Jaborra denied it.

When Sergeant Gray arrived, Deputy Anderson briefed him on the situation out of Jaborra's presence. Sergeant Gray then asked Jaborra some questions. During this time, Deputy Anderson noticed a bulge in Jaborra's pocket about four inches long. When Anderson asked what the bulge was, Jaborra said it was a knife. When Jaborra offered to remove it and began moving his hand toward his pocket, the officers quickly told him not to remove the knife. Corporal Sullivan grabbed Jaborra's arm, pulling him off balance, and told him to hold his hands over his head. Sergeant Gray then reached into Jaborra's pocket and pulled out the knife. In the same movement, Sergeant Gray also grabbed from the pocket a small yellow plastic box that rattled. Jaborra was asked whether the box had his medication in it and, according to Sergeant Gray, Jaborra "just stared." Sergeant Gray then asked Jaborra for permission to open the container and, according to Deputy Anderson and Sergeant Gray, Jaborra nodded his head. Sergeant Gray opened the container, revealing round, green pills that Sergeant Gray immediately recognized as the prescription drug OxyContin, which contains the narcotic Oxycodone. Anderson thereupon placed Jaborra under arrest, and he was charged with possession of a controlled substance, Idaho Code § 37–2732(c)(1).

Prior to trial, Jaborra moved to suppress the evidence of the content of the pillbox. The district court granted Jaborra's motion because it found that the officers' conduct at several junctures in extending the stop, searching Jaborra, and opening the pillbox violated the Fourth Amendment's prohibition against unreasonable searches and seizures. The State appeals this suppression order.

## II.

## ANALYSIS

■ The State contends that the evidence should not have been suppressed because, contrary to the district court's holdings, the traffic stop was not unlawfully extended, the search did not impermissibly extend beyond the scope of a protective frisk, and Jaborra voluntarily consented to the officers opening the pillbox. A determination that the trial court's disposition was correct on any one of these issues would require affirmance of the suppression order on appeal. Because we conclude that we must affirm the trial court's finding that Jaborra's consent to opening the pillbox was not voluntary, we do not address the remaining issues.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. A search conducted by law enforcement officers without a warrant is per se unreasonable unless the State shows that it fell within one of the narrowly drawn exceptions to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Dominguez,* 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct.App.2002). A search conducted with consent that was voluntarily given is one such exception. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041; *Dominguez,* 137 Idaho at 683, 52 P.3d at 327. It is the State's burden to prove, by a preponderance of the evidence, that the consent was voluntary rather than the result of duress or coercion, direct or implied. *Schneckloth,* 412 U.S. at 221, 93 S.Ct. 2041; *State v. Hansen,* 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *State v. Fleenor,* 133 Idaho 552, 554, 989 P.2d 784, 786 (Ct.App.1999); *Dominguez,* 137 Idaho at 683, 52 P.3d at 327. A voluntary decision is one that is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth,* 412 U.S. at 225, 93 S.Ct. 2041. *See also Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). An individual's consent is involuntary, on the other hand, "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* In determining whether a subject's will was overborne in a particular case, the court must assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041. Thus, whether consent was granted voluntarily, or was a product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting for subtly coercive police questions and the possibly vulnerable subjective state of the party granting the consent to a search. *Id.* at 229, 93 S.Ct. 2041; *Hansen,* 138 Idaho at 796, 69 P.3d at 1057; *Dominguez,* 137 Idaho at 683, 52 P.3d at 327.

A determination of voluntariness does not turn "on the presence or the absence of a single controlling criterion." *Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041.

Factors to be considered include whether there were numerous officers involved in the confrontation, *Castellon v. United States,* 864 A.2d 141, 155 (D.C.2004); *United States v. Jones,* 846 F.2d 358, 361 (6th Cir.1988); the location and conditions of the consent, including whether it was at night, *United States v. Mapp,* 476 F.2d 67, 77–78 (2d Cir.1973); whether the police retained the individual's identification, *United States v. Chemaly,* 741 F.2d 1346, 1353 (11th Cir.1984); whether the individual was free to leave, *Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Chemaly,* 741 F.2d at 1353; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002); and whether the individual knew of his right to refuse consent, *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. 2041; *Chemaly,* 741 F.2d at 1353; *State v. Jones,* 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct.App.1995). Although the presence of multiple police officers does not, standing alone, establish coercion, and there is no requirement that police inform the individual that he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances. *See Robinette,* 519 U.S. at 39–40, 117 S.Ct. 417; *Schneckloth,* 412 U.S. at 248, 93 S.Ct. 2041; *Jones,* 846 F.2d at 361; *Chemaly,* 741 F.2d at 1353; *Castellon,* 864 A.2d at 155; *Gutierrez,* 137 Idaho at 651, 51 P.3d at 465; *Jones,* 126 Idaho at 793, 890 P.2d at 1216.

The trial court is the proper forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth,* 412 U.S. at 233, 93 S.Ct. 2041. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Post,* 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), *overruled on other grounds, State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981). In short, whether a consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen,* 138 Idaho at 795, 69

P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct.App.1999).

The district court here found that Jaborra's consent was not voluntary but was the product of coercive circumstances. These circumstances were found by the district court as follows:

> A citizen is surrounded by three policemen who have come to the scene in three different police cars. It is late at night (or more precisely in the wee hours of the morning). One or two of the cars have their overhead lights flashing. The officers are in uniform and armed. The citizen is grabbed by the arm, knocked off-balance and told to put his hands on his head. His driver's license, which he gave to one of the deputies, has never been returned. He is not free to leave.... He has not been afforded a Miranda warning.

The testimony of the State's own witnesses provides substantial evidence supporting each of these factual findings. The district court's further finding that Jaborra's consent was involuntary is a reasonable inference garnered from the totality of the circumstances and therefore is not clearly erroneous.

The State nevertheless contends that it met its burden to prove voluntariness through the testimony of two officers who said they saw Jaborra nod his head in response to the request for permission to open the box. The nod, however, is evidence only of consent, not proof of its voluntariness. Moreover, we have noted that a slight gesture such as a shrug of the shoulders or a minimal affirmative gesture, may indicate mere acquiescence rather than consent. *State v. Zapp*, 108 Idaho 723, 726, 701 P.2d 671, 674 (Ct.App.1985).

Because the district court's finding that Jaborra did not voluntarily consent to the opening of the box is not clearly erroneous, we affirm the order suppressing the evidence found within the pillbox.

Chief Judge PERRY and Judge GUTIERREZ concur.