**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36166**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2010 Opinion No. 76** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: November 22, 2010** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| ROBERTO MORAN-SOTO, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Judgment of conviction for possession of a controlled substance with intent to deliver, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Chief, Appellate Unit, Boise, for appellant. Sara B. Thomas argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

MELANSON, Judge

Roberto Moran-Soto appeals from his judgment of conviction for possession of a controlled substance with intent to deliver. Specifically, Moran-Soto challenges the district court's denial of his motion to suppress. The state asserts that Moran-Soto's appeal should be dismissed because Moran-Soto has absconded from probation and remains a fugitive from justice. For the reasons set forth below, we deny the state's motion to dismiss and affirm Moran-Soto's judgment of conviction.

**I.**

**FACTS AND PROCEDURE**

Two police officers entered a tavern and noticed a napkin on the bar, which looked like it contained plastic bags. An officer approached the bar, opened the napkin, and discovered what appeared to be bindles of methamphetamine inside. The officers then told everyone in the tavern to stay where they were and began to question the bartender, who became unruly and refused to

1

cooperate with police. The officers handcuffed the bartender and began to question a nearby man at the bar, who admitted that the drugs were his. The man claimed that Moran-Soto, who was also seated at the bar, had earlier attempted to sell him drugs.

An officer then began to question Moran-Soto in English. First, the officer asked Moran-Soto to provide his identification. Moran-Soto handed the officer an identification card from Mexico, which the officer used to run a warrant check through dispatch. After doing so, the officer set Moran-Soto's identification card on the bar. The officer then asked Moran-Soto if he had anything illegal on his person, and Moran-Soto answered that he did not and then told the officer to check for himself. The officer declined, being wary of reaching into Moran-Soto's pockets due to the possibility of needles being present, but he asked Moran-Soto to empty his pockets. Moran-Soto complied and emptied the contents of his pockets onto the bar. The officer again asked if Moran-Soto possessed anything illegal, and Moran-Soto raised his arms and said, "Check." The officer reached into Moran-Soto's pocket and located a bindle of what appeared to be methamphetamine.

The officer placed Moran-Soto in handcuffs and began to read him his *Miranda*[1] rights. Moran-Soto replied that he did not understand what the officer was saying. The officer asked the owner of the tavern to translate the *Miranda* rights into Spanish for Moran-Soto. Thereafter, Moran-Soto admitted to the officers that the bindle of drugs from his pocket belonged to him.

Moran-Soto was charged with possession of a controlled substance with intent to deliver. I.C. § 37-2732(a)(1)(A). Moran-Soto filed a motion to suppress the verbal and physical evidence obtained by the officers in the incident. Following a hearing, the district court denied the motion to suppress the physical evidence, but granted the motion with regard to Moran-Soto's statements made after his arrest as having been elicited in violation of *Miranda*. Moran-Soto entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Moran-Soto to a unified term of ten years, with a minimum period of confinement of three years, but suspended Moran-Soto's sentence and placed him on probation for five years. Moran-Soto appeals.

The state filed a motion to dismiss Moran-Soto's appeal, arguing that Moran-Soto had absconded from supervision because he had been deported and failed to file written reports with

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

his probation officer. Moran-Soto, through counsel, filed an objection to the state's motion, asserting that Moran-Soto is not a typical fugitive from justice who should be punished by the dismissal of his appeal.

## II.

## ANALYSIS

There are two issues currently before this Court. First, we will address the state's motion to dismiss. Second, this Court will address the district court's denial of Moran-Soto's motion to suppress.

### A. Motion to Dismiss

Moran-Soto was sentenced on January 16, 2009. The district court did not issue Moran-Soto's written judgment of conviction and order suspending his sentence until February 10, 2009. The judgment included probation terms requiring Moran-Soto to submit a written report to his probation officer every month and to contact the Department of Correction within five days of his re-entry into the United States. On March 12, 2009, Moran-Soto's probation officer filed a report of probation violation in the district court, stating that Moran-Soto had been deported and failed to file a truthful written report every month as required by his terms of probation. The report also indicated that Moran-Soto was deported on January 22, 2009, six days after his sentencing hearing and weeks prior to the issuance of his written judgment of conviction.

The state asserts that, because Moran-Soto was deported and failed to file a written report with his probation officer, he absconded from supervision and his appeal should be dismissed. Moran-Soto responds that he is not a typical fugitive from justice because he has not willfully violated his terms of probation. In support of this argument, Moran-Soto asserts that the district court did not provide him with a written copy of his judgment or terms of probation before he had been deported. As such, Moran-Soto argues, he was not given notice of who his probation officer was or where to send his written reports. In addition, Moran-Soto argues that, because he was not provided with a written order containing his probation terms, the state has failed to show that Moran-Soto understood what was required of him should he be deported.

The decision whether to dismiss the appeal of a criminal defendant who has escaped from custody or absconded from probationary supervision is within an appellate court's sound discretion. *See State v. Larrea*, 130 Idaho 290, 292, 939 P.2d 866, 868 (Ct. App. 1997). In

Idaho, the right to appeal is purely statutory and is not mandated as a constitutional requirement. *Gardner v. State*, 91 Idaho 909, 912, 435 P.2d 249, 252 (1967). An appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his or her appeal. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). The rationale for this fugitive dismissal rule is two-fold. *Id*. at 240-41. First, any judgment produced against a fugitive appellant would be unenforceable. *Id*. at 240.

Second, as stated by the United States Supreme Court in a case where the appellant jumped bail and was considered a fugitive from justice:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

*Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970). In other words, a defendant's escape during the pendency of an appeal essentially amounts to a waiver of the right to appeal; dismissal discourages escapes and encourages fugitives to surrender. *Ortega-Rodriguez*, 507 U.S. at 240-41.

In this case, the record includes the district court's minutes from Moran-Soto's sentencing hearing. The minutes describe Moran-Soto's probation terms, in part, as follows:

> The following terms are *suspended* in the event of the defendant's deportation for the period that the defendant remains outside the United States of America. During the period that the defendant remains outside the United States of [America] pursuant to a deportation order, the defendant *shall* . . . submit to his officer a truthful written report each and every month and report in person when required.

(emphasis added). The above-quoted passage contains contradictory terms. The first sentence states that the terms listed in the second sentence are suspended if Moran-Soto is deported. However, the second sentence requires Moran-Soto to report to his probation officer if he is deported. The minutes are silent as to whether Moran-Soto, who was assisted by an interpreter at the sentencing hearing, understood these terms. In addition, the state failed to provide this Court with a transcript from the sentencing hearing so that we may review how the district court informed Moran-Soto of his terms of probation.

4

The court minutes also indicate that the district court provided Moran-Soto with a written notice of his rights upon sentencing, which he was instructed to review and sign. Unfortunately, evidence of such signed written notice cannot be found in the record. In addition, Moran-Soto's judgment of conviction, which included his written probation terms, was entered weeks after he had been deported. As a result, this Court is unable to determine whether Moran-Soto understood the terms of his probation prior to his deportation. Therefore, the state has failed to demonstrate that Moran-Soto is a fugitive from justice who is disentitled from pursuing his appeal. Accordingly, the state's motion to dismiss Moran-Soto's appeal is denied.

## B.    Motion to Suppress

On appeal, Moran-Soto argues that the district court erred by denying his motion to suppress. Specifically, Moran-Soto asserts that the state failed prove that his consent to the search of his pocket was voluntary. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although a warrantless search is generally illegal and violative of the Fourth Amendment, such a search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The state must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily,

5

or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen,* 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

Moran-Soto argues that the warrantless search of his pocket was unlawful because, under the totality of the circumstances, his consent to the search was not voluntary. In support of his argument, Moran-Soto relies on *State v. Garcia*, 143 Idaho 774, 152 P.3d 645 (Ct. App. 2006). In *Garcia*, this Court listed some of the factors a court may consider when determining whether consent to search was given voluntarily, such as: the number of officers involved in the confrontation; the location and conditions of the consent, including whether it was at night; whether the police retained the individual's identification; whether the individual was free to leave; and whether the individual knew of his or her right to refuse consent. *Id*. at 778, 152 P.3d at 649.

In that case, officers observed Garcia smoking what appeared to be marijuana with a group of men at a public campground. Three officers approached the men; informed them what they had observed; and stated that, if the men handed over the marijuana, they would be given citations and released, but not arrested. However, the officers also informed the men that, if they did not voluntarily turn over the marijuana, they would be arrested. In response to the officers' statement, one of the men turned over his marijuana to police. Some time later, officers asked Garcia's permission to search his vehicle, which was located at the scene. Garcia agreed and the search resulted in the discovery of nearly two pounds of marijuana.

Garcia filed a motion to suppress, arguing that his consent to the search of his vehicle was coerced by the officers' prior threat of arrest. The district court denied the motion and this Court affirmed, holding that the officers' threat was not coercive because it was far removed from the actual search of the vehicle. In addition, this Court held that Garcia's consent to the search was voluntary because the search occurred in broad daylight and Garcia was not severely outnumbered by police.

This Court also addressed a defendant's consent to a search in *State v. Jaborra*, 143 Idaho 94, 137 P.3d 481 (Ct. App. 2006). In that case, officers stopped Jaborra for driving too slowly and for driving with an expired registration. Officers noticed a bulge in Jaborra's pocket and confirmed that it was a knife. Upon removing the knife, an officer also removed a small plastic box from Jaborra's pocket. After a scuffle with Jaborra, officers asked if they could open the box and Jaborra nodded his head. The box contained a controlled substance. Jaborra was

6

arrested for possession of a controlled substance and filed a motion to suppress, which the district court granted. This Court affirmed, holding that Jaborra's consent to open the box was not voluntary based on the findings of the district court. *Id*. at 98, 137 P.3d at 485. The district court found that the confrontation between Jaborra and the armed officers occurred late at night. In addition, the district court found that the officers grabbed Jaborra by the arm, knocked him off balance, told him to put his hands on his head, and confiscated his driver's license prior to asking for his consent to search. Applying the same factors set out in *Garcia*, this Court affirmed the district court's determination that such factors demonstrated that Jaborra's consent was not voluntary.

In this case, Moran-Soto argues that the state failed to prove that he made a free and unconstrained choice to allow the officer to search his pocket. Moran-Soto contends that his consent was coerced because the officers were wearing uniforms and badges, had already handcuffed two people, and told everyone in the tavern to remain where they were. At the hearing on the motion to suppress, the officer testified that he detained Moran-Soto in order to further investigate the discovery of drugs on the bar near where Moran-Soto was seated. During this detention, the officer testified that Moran-Soto was not free to leave. Such an investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

The officer testified that, when he initially asked Moran-Soto if he possessed anything illegal, Moran-Soto raised his arms and offered for the officer to "check." The officer also stated that Moran-Soto provided his identification and emptied his pockets in response to verbal requests made by the officer in English. The officer further testified that, after emptying his pockets, Moran-Soto spoke English and raised his arms in response to the officer's request to search his pocket and again responded, "Check." Such requests were within the scope of the investigative detention, in light of the discovery of methamphetamine nearby and the man at the bar's statement that Moran-Soto had recently attempted to sell him drugs. Unlike the officers in *Jaborra*, the officers did not make physical contact with Moran-Soto. In addition, Moran-Soto's confrontation with the officers occurred around 5:30 p.m. on a summer evening indoors, not at outside at night in the dark. Finally, similar to the circumstances in *Garcia*, there were other patrons present at the tavern at the time of the search and Moran-Soto was not severely

outnumbered by police. Therefore, substantial evidence supported the district court's conclusion that Moran-Soto's consent to search was voluntary and not coerced.[2]

## IV.

## CONCLUSION

The state has failed to demonstrate that Moran-Soto understood the terms of his probation prior to being deported. Therefore, the state's motion to dismiss Moran-Soto's appeal is denied.

Substantial evidence supported the district court's conclusion that Moran-Soto's consent to the search of his pocket was voluntary. Therefore, the district court did not err by denying Moran-Soto's motion to suppress. Accordingly, Moran-Soto's judgment of conviction is affirmed.

Chief Judge LANSING, **CONCURS.**

Judge GUTIERREZ, **SPECIALLY CONCURRING**

I write separately because I believe that the state failed to establish that Moran-Soto's consent to search his pocket was voluntary. At the hearing on the motion to suppress, the officers testified that, upon discovering what appeared to be methamphetamine on the bar, they told everyone in the bar to remain where they were. The officers then began to question the bartender and the man at the bar. One officer testified that the bartender did not wish to be detained and was therefore placed in handcuffs and separated from the man at the bar, who was also handcuffed. The majority states that this case is unlike the circumstances in *Jaborra* because no physical contact occurred between Moran-Soto and the officers. However, the record reveals that there was a physical scuffle between the bartender and the officers prior to the officers' investigation of Moran-Soto. Moran-Soto was present during the scuffle, and it was reasonable for him to conclude that he was required to cooperate with police or would otherwise be handcuffed. Further, similar to the circumstances in *Jaborra*, the officer in this case confiscated Moran-Soto's identification when the officer placed the Mexican identification card on the bar after reviewing it and did not return it to Moran-Soto. Based on the actions of the

---

[2]    At the hearing on the motion to suppress, Moran-Soto argued that his consent to the search of his pocket was coerced because he did not understand or speak English and that he only complied with the officer's requests because the officer was using hand signals. On appeal, Moran-Soto does not dispute the district court's conclusion that, based on the totality of the circumstances, the communication level between the officer and Moran-Soto was sufficient to establish consent.

officers, it is unlikely that Moran-Soto understood his right to refuse consent to the search of his pocket. In light of these circumstances, I conclude that the state has failed to establish that Moran-Soto's consent to the search of his pocket was not the result of duress or coercion. Therefore, in my view, the officer's search of Moran-Soto's pocket was illegal.

Nevertheless, I would affirm Moran-Soto's conviction on the alternative basis that the state met its burden to demonstrate that the evidence discovered during the illegal search of Moran-Soto's pocket would have inevitably been discovered by officers. The exclusionary rule is the judicial remedy for addressing illegal searches and bars the admission or use of evidence gathered pursuant to the illegal search. *See Stuart v. State*, 136 Idaho 490, 496, 36 P.3d 1278, 1284 (2001). An exception to the exclusionary rule is the inevitable discovery doctrine. *Id*. The inevitable discovery doctrine applies when a preponderance of the evidence demonstrates that the information would have inevitably been discovered by lawful methods. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *State v. Gibson*, 141 Idaho 277, 286 n.4, 108 P.3d 424, 433 n.4 (Ct. App. 2005).

In this case, the district court determined in the alternative that the officers had probable cause to arrest Moran-Soto and would have inevitably discovered the methamphetamine during a lawful search incident to arrest. Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian,* 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian,* 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian,* 129 Idaho at 136, 922 P.2d at 1062. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id*. A probable cause analysis must allow room for mistakes on the part of the arresting officer but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *State v. Kerley,* 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

The officers testified that they observed what appeared to be methamphetamine on the bar near where Moran-Soto was seated. In addition, one officer testified that the man at the bar stated that Moran-Soto had attempted to sell him methamphetamine. Such evidence supports a reasonable belief that Moran-Soto was guilty of selling or possessing methamphetamine. Therefore, the officers had probable cause to arrest Moran-Soto and would have discovered the methamphetamine in his pocket during a lawful search incident to arrest. The district court's application of the inevitable discovery doctrine was not in error. Accordingly, I would affirm Moran-Soto's judgment of conviction on that alternative basis.