**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40259**

| | | |
|---|---|---|
| DAVID B. MYERS, | ) | 2014 Unpublished Opinion No. 318 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: January 9, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Susan E.Wiebe, District Judge.

Judgment denying post-conviction relief, affirmed.

David B. Myers, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

David B. Myers appeals from the district court's judgment denying post-conviction relief after an evidentiary hearing. Myers argues that the post-conviction court erred in two respects. First, it failed to adequately consider certain evidence. Second, it erred by finding that Myers' counsel was not ineffective for failing to file a timely suppression motion because that motion would not have been granted by the trial court. We affirm.

**I.**

**BACKGROUND**

On January 21, 2012, Officer Brockback was attempting to execute a felony arrest warrant. He located the target's car illegally parked next to a property on which a home and a camper trailer were situated. While surveilling the target's vehicle, Officer Brockback observed another vehicle drive up to the property and then drive away. As part of this investigation, Officer Brockback stopped that vehicle and asked the driver if she knew if the wanted person

1

was in the trailer. A second officer, Sergeant Hoadley, arrived at the scene of the traffic stop to assist Officer Brockback. The stopped driver did not know the wanted person, but explained that she had dropped off two men at "Dave's residence," the trailer. Officers were also informed that the two men had traveled from Payette to the trailer in Caldwell in order to exchange stolen property for narcotics. Believing that either the two men from Payette or the target of the warrant might be in the trailer, officers approached the trailer and knocked on the door.

Myers answered the door. Officer Brockback informed Myers that there had been reports of suspicious activity taking place at the trailer and asked if he could come into the trailer to speak with Myers. Myers made a gesture indicating that the officer could come in and stepped back to allow the officer in. The officer entered and observed that the trailer was small and cramped with boxes stacked in such a way that the rear of the camper trailer was not visible from the officer's position. Officer Brockback was concerned for his safety because he believed that the obscured areas of the trailer were large enough for a person to hide and because of his suspicion that people engaged in criminal conduct were inside the trailer. Accordingly, Officer Brockback asked Myers if he could search the trailer. Myers refused and asserted his constitutional right to be free from searches in his home. Myers did not ask the officers to leave his home or otherwise indicate any desire to terminate the encounter. Officer Brockback honored Myers' refusal but asked Myers if he had any identification; Myers offered Officer Brockback his identification card and Officer Brockback stepped out of the trailer to run a records check.

When Officer Brockback stepped out of the trailer, Sergeant Hoadley stepped into the trailer and spoke with Myers. Sergeant Hoadley acknowledged that Myers refused a search of the premises, but asked if he could perform a quick sweep. Sergeant Hoadley explained why he wished to perform a sweep and explained what the sweep would entail. Myers said, "Don't scare my cat," and moved partially out of the officer's way. Sergeant Hoadley explained that there was not room to move by him and Myers moved further out of the way. Once Sergeant Hoadley moved to the rear of the trailer, he observed a shotgun shell and a small caliber handgun. Sergeant Hoadley confirmed that Myers had a prior felony conviction and was not permitted to possess a firearm. On this basis, he directed Officer Brockback to arrest Myers.

We summarized the remaining background of this case in the direct appeal, *State v. Myers*, Docket No. 38161 (Ct. App. Sept. 8, 2011) (unpublished):

Myers was charged with unlawful possession of a firearm. A public defender was appointed to represent him. After Myers pleaded not guilty on February 12, 2010, the case was assigned to District Judge Hoff. On March 2, Judge Hoff entered an order disqualifying herself, and the case was transferred to Judge Wiebe. Judge Wiebe granted a defense motion to enlarge time for pretrial motions, requiring all pretrial motions to be filed within fourteen days of defense counsel's receipt of the preliminary hearing transcript, which had been previously requested. The transcript was filed and delivered on March 10, 2010, but support staff in the public defender's office did not notify Myers' counsel that it had arrived, and counsel did not independently check for the transcript. On April 19, 2010, Myers' counsel realized the case had been reassigned to Judge Wiebe upon checking the district court's register of actions (which also shows the transcript was filed March 10, 2010). Pursuant to office protocol, the case was transferred to another attorney in the public defender's office who was assigned to Judge Wiebe's court. The transferring attorney suggested to the new attorney that he should file a suppression motion. The newly-assigned attorney scheduled a hearing for a motion to suppress and even discussed plans to file the motion during a pretrial conference on April 30, but waited until June 10 to file the motion. On the same date he also filed a motion to enlarge the time for filing pretrial motions. After holding hearing on the matter on June 25, 2010, the district court denied the motion to enlarge time. The court explicitly recognized that the decision was discretionary, but noted that it had already enlarged the time to file pretrial motions, effectively extending the time from twenty-eight days to forty days. The court indicated that its decision may have been different had the motion to enlarge time been brought soon after Myers' counsel discovered that the transcript had been delivered, instead of waiting at least forty-one additional days to file the motion.

After the trial court denied the motion to enlarge time, Myers entered a conditional guilty plea preserving his right to appeal the trial court's ruling on that motion. In Myers' direct appeal, we held that the trial court did not abuse its discretion by denying Myers' motion to enlarge the time to file pretrial motions. *Id.*

In this post-conviction action, Myers alleged that his defense counsel was ineffective when he failed to file a suppression motion. The State and Myers stipulated that Myers' counsel's performance was deficient because he failed to file a timely motion. However, the State did not stipulate to prejudice. Accordingly, the post-conviction court held an evidentiary hearing solely on the question of whether the motion would have been granted by the trial court if Myers' counsel had timely filed it. The post-conviction court held that the trial court would not have granted the motion. It held that Sergeant Hoadley was permitted to enter the trailer and perform a protective sweep under the consent exception to the warrant requirement. During that

3

sweep, Sergeant Hoadley saw the firearm in plain view. Because the post-conviction court concluded that Sergeant Hoadley's actions did not violate Myers' Fourth Amendment rights, it held that the motion would have been denied.

## II.

## ANALYSIS

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the claimant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

4

In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Boman*, 129 Idaho at 526, 927 P.2d at 916.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The trial court is the proper forum for the careful sifting of the unique facts and circumstances of each case necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). In short, whether consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999).

5

Myers argues that the trial court did not hear his refusal to consent to a search of his trailer because it did not listen to the entire audio recording. On this basis, he argues the post-conviction court failed to adequately consider the evidence he adduced at the hearing. We construe this argument as an argument that the post-conviction court's findings of fact are clearly erroneous. This argument is unpersuasive. In reviewing the entire recording, we observe that Myers' statements are frequently unintelligible because of the placement of the microphone and road noise. Of the intelligible statements, Myers can be heard refusing to consent to a search only once, in response to Officer Brockback's request to search the trailer. This refusal is included in the post-conviction court's recitation of facts. Therefore, we conclude that the post-conviction court's finding in that regard is not clearly erroneous. Furthermore, the audio recording was stopped after Myers' post-conviction counsel requested that it be stopped. Thus, the district court's omission to listen to the balance of the recording, if error, was invited error which will not serve as a basis for appellate relief. *See State v. Pentico*, 151 Idaho 906, 915, 265 P.3d 519, 528 (Ct. App. 2011).

Myers also argues that his consent was insufficient to act as an exception to the warrant requirement of the Fourth Amendment. First, he argues that he did not consent to the officers entering his trailer. Second, he argues that the officers were required to leave after he first denied their request to search the trailer. Third, he generally argues that his consent was not unequivocal, specific, freely given, or intelligent.[1] We construe his final argument as a claim that his consent was not, under the totality of circumstances, voluntary.

The post-conviction court found that Myers did consent to the officers entering his home. This ruling was based upon its finding that the officers were credible and Myers was not credible. As stated above, we will not reweigh credibility on appeal. *Larkin*, 115 Idaho at 73, 764 P.2d at 440. Officer Brockback testified that he asked Myers if he could come into the camper and Myers "made a gesture" and "stepped back allowing [Brockback] into the camper." At the hearing, the officer described the gesture as a "gesture of acquiescence." As stated above, "consent to search may be in the form of words, gestures, or conduct." *State v. Mangum*, 153

---

[1] Myers also argues that the officers were not permitted to search his home under any other warrant requirement. We need not reach this issue as we conclude that Myers consented to the sweep.

Idaho 705, 714, 291 P.3d 44, 53 (Ct. App. 2012). However, we have previously found that "a slight gesture such as a shrug of the shoulders or a minimal affirmative gesture, may indicate mere acquiescence rather than consent." *Jaborra*, 143 Idaho at 98, 137 P.3d at 485; *see State v. Zapp*, 108 Idaho 723, 726, 701 P.2d 671, 674 (Ct. App. 1985). Acquiescence, unlike consent, is not an exception to the warrant requirement. Nonetheless, we conclude that the trial court did not err by holding that Myers consented to the officers entering his trailer and we distinguish *Jaborra* and *Zapp*.[2]

The majority of the acquiescence cases involve coercive environments. *See, e.g.*, *Jaborra*, 143 Idaho at 98, 137 P.3d at 485 ("consent was not voluntary but was the product of coercive circumstances"); *Zapp*, 108 Idaho at 726, 701 P.2d at 674 ("Zapp was being detained. The atmosphere was coercive."); *State v. Huskey*, 106 Idaho 91, 94, 675 P.2d 351, 354 (Ct. App. 1984) (applying a rule from *Bumper v. North Carolina*, 391 U.S. 543 (1968), which held that acquiescence to an officer's claim of authority does not amount to consent). The record in this case does not indicate that there was a coercive environment.[3] Moreover, Myers' nonverbal response consisted of more than an ambiguous gesture; Myers also stepped back to allow the officer into the trailer. These two nonverbal responses, taken together, and in response to a request to be allowed inside, unambiguously indicate consent.

Myers' second claim--that the officers were required to leave his property when he refused to permit them to search his entire trailer--is also meritless. The officers were still acting within the scope of a prior, unrevoked consent to enter. Nothing in Myers' words or actions indicated that he wished to revoke his consent or requested that they leave.

Finally, Myers argues that his consent to a sweep of his trailer was not unequivocal, specific, freely given, or intelligent. We construe this argument as a claim that, under the totality

---

[2]     In the briefing below, Myers' counsel conceded that Myers gave the officers permission to enter the house. In the interest of judicial efficiency, we review this issue on the merits and, as stated above, conclude that the post-conviction court did not err in finding that Myers consented to the officers entering the trailer.

[3]     Myers testified that Hoadley threatened him by drawing a firearm, and at various times, pointing a firearm at him. The post-conviction court did not find Myers credible as to this assertion and found that the officers did not draw a firearm or point one at Myers. The post-conviction court's finding of fact was not clearly erroneous. Accordingly, we do not consider any coercion that might have resulted from the alleged brandishing of a firearm.

7

of circumstances, his consent was not voluntary. As stated above, the post-conviction court's determination that Myers consented is a finding of fact that will not be overturned on appeal unless it is clearly erroneous.

Below, Myers indicated several factors tending to show that his consent was not voluntary. First, he argued that the officers repeatedly asked him similar questions. Repeated questioning can be overbearing and indicate coercion. *Schneckloth*, 412 U.S. at 226; *State v. Brown*, 155 Idaho 423, 430, 313 P.3d 751, 758 (Ct. App. 2013). However, in this case, the officers did not engage in the type of repeated questioning that tends to overbear a defendant's will. The entire conversation was short. From Officer Brockback's first request to search the trailer until Sergeant Hoadley began the sweep, just three minutes elapsed. The officers accepted Myers' refusal to permit a search when Myers explained that he wanted to assert his rights under the Fourth Amendment. Thereafter, in response to Myers' refusal, officers and Myers had a brief conversation in which the officers outlined their concerns, giving specific examples: the officers explained that they had received reports that two men had previously been on the property, that they were wary another person might be in the trailer, and that their view of the rear of the trailer was obscured. Additionally, officers explained the differences between the search they understood Myers refused to consent to and the sweep they wished to perform. Here, the officers were not repeating questions to overbear Myers' will, they were asking if he would consent to an alternative procedure and explaining why they would like him to do so.

Myers also argued that his ability to refuse to consent to the sweep was limited because he had given Officer Brockback his identification card. We have previously held that an officer retaining an individual's identification may indicate coercion. *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006); *see also United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984). In this case, this factor is not particularly indicative of coercion. In many cases, the retention of identification is of particular import because it occurs in the context of travel and prevents the individual from leaving. *See, e.g.*, *Chemaly*, 741 F.2d at 1353 (the officers possessed the defendant's ticket and passport while he was at the airport attempting to travel). In such a context, the retention of identification is indicative of the officer's intention to seize a person. *See id*. at 1352 ("the presence of express or implied coercion, is similar to factors involved in determining whether a seizure has occurred under the fourth amendment . . . retention of documents such as a driver's license and an airline ticket has been treated as highly

significant on the question of whether a seizure has occurred."). Here, the actions of the officers did not tend to indicate any intention to detain Myers. The officers did nothing to indicate they would refuse to return his identification. Their series of requests for consent, and honoring Myers' initial refusal of an interior search, made it clear that the officers were honoring his wishes and had not converted the encounter into a seizure or investigative detention.

Myers also argued that any consent he gave was ambiguous and that the ambiguity indicates that his consent was not voluntarily given. Myers never gave the officers an unambiguous verbal consent. Instead, in response to Sergeant Hoadley's request to perform a sweep, Myers said, "Don't scare my cat please," and then began to move aside to permit Sergeant Hoadley to perform the sweep. Then, when the officer stated that he did not think there was room for him to pass by Myers, Myers moved out of the way and Sergeant Hoadley responded, "I appreciate it." While an unambiguous verbal consent may be preferable, a person may consent "in the form of words, gestures, or conduct." *Mangum*, 153 Idaho at 714, 291 P.3d at 53. Here, the response, "Don't scare my cat," indicated that Myers expected a change in the status quo; i.e., he expected Sergeant Hoadley to do something that might scare his cat. Accordingly, the statement, "Don't scare my cat," indicates that Myers was consenting to the search. This statement, together with Myers' physical movement permitting the officer to move past him, sufficiently conveyed Myers' consent.

While Myers has highlighted factors that might tend to show he was coerced, he ignored many of the facts that show that his consent was voluntarily given. Myers knew his rights. He had previously asserted those rights by, more or less accurately, stating the warrant requirement to search a home. When Myers asserted his rights, the officers honored his refusal to consent to the search. Moreover, the tone of the request to perform a sweep of the trailer was not demanding or overbearing. Instead, Sergeant Hoadley consistently emphasized that he was asking permission and not ordering Myers to comply. Sergeant Hoadley asked if Myers would "mind" if he performed a safety sweep. Then, when Myers asked why the officer "needed" to perform the sweep, the officer made clear that he was "asking" permission to perform the sweep. Finally, the exchange took place during the day and at Myers' home; these factors reduce the risk of coercion. *See State v. Moran-Soto*, 150 Idaho 175, 181, 244 P.3d 1261, 1267 (Ct. App. 2010).

For all of these reasons, we conclude that the post-conviction court's finding that Myers consented to the sweep of the trailer was not clearly erroneous. On this basis, the trial court

correctly determined that Myers was not prejudiced by his attorney's failure to file a suppression motion and denied post-conviction relief. Therefore, the judgment of the district court is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**