**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48466**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 25, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| NEIL WAYNE GOODRICH, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer; Hon. Fred M. Gibler, District Judges.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Neil Wayne Goodrich appeals from his judgment of conviction for possession of a controlled substance, Idaho Code § 37-2732(c)(1). Goodrich challenges the district court's partial denial of his motion to suppress, arguing he did not voluntarily consent to a search of a cigarette box. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While patrolling around midnight, Sergeant Klitch observed a vehicle following another vehicle too closely and making an unusual noise, indicating an insufficient muffler. Sergeant Klitch initiated a traffic stop, and shortly thereafter, Officer Mauri arrived in a separate patrol car to assist with the stop. The officers separately approached each side of the vehicle with Sergeant

1

Klitch contacting the driver and Officer Mauri contacting the passenger, Goodrich. Sergeant Klitch observed both the driver and Goodrich exhibiting signs of intoxication, including glassy, bloodshot eyes and dilated pupils and detected the odor of alcohol in the vehicle.

Sergeant Klitch asked the driver for her driver's license, vehicle registration, and insurance and asked Goodrich if he had identification. Goodrich provided Officer Mauri identification, and he briefly examined it before returning it. Sergeant Klitch then asked if any weapons were in the vehicle, and Goodrich responded he had a buck knife on his person.

Officer Mauri began conducting a field sobriety test of the driver who admitted smoking marijuana earlier that day and consented to a search of the vehicle's glovebox. Meanwhile, Sergeant Klitch asked Goodrich to exit the vehicle to permit Sergeant Klitch to search the glovebox and asked to frisk Goodrich for weapons. Goodrich again stated he had a buck knife. When Sergeant Klitch asked Goodrich to set the knife in the vehicle, he could not locate the knife on his person and stated the knife must have fallen off him. Sergeant Klitch again asked to conduct a frisk, and Goodrich consented.

During the frisk, Sergeant Klitch observed a cigarette box sticking out of Goodrich's pants pocket. Sergeant Klitch asked Goodrich, "Do you mind opening that and showing it to me?" While reaching for the cigarette box, Goodrich commented, "Why do I need to do all this? This is bull s--t." Sergeant Klitch did not respond to Goodrich's comment. Simultaneous to Goodrich removing the box from his pocket, the following exchange occurred:

| | |
|---|---|
| GOODRICH: | Honestly, there's going to be some coke in there. Probably in the bottom of it. |
| SERGEANT KLITCH: | How much coke? |
| GOODRICH: | Not much. Enough for a f--king party. |

Goodrich then removed a plastic bag from the cigarette box and showed it to Sergeant Klitch. Sergeant Klitch arrested Goodrich. Subsequently, Goodrich made incriminating statements to Sergeant Klitch under a belief that Goodrich could work as a confidential informant.

The State charged Goodrich with possession of a controlled substance with intent to deliver and alleged he was a persistent violator. Goodrich filed a motion to suppress, arguing he was seized during the traffic stop, did not consent to the search of the cigarette box, and involuntarily made incriminating statements. At a hearing on the motion, Officer Mauri and Sergeant Klitch testified, and the State admitted the videos from the officers' body cameras into evidence. During a second, continued hearing, Goodrich testified.

2

In a written decision, the district court partially denied Goodrich's suppression motion. The court ruled that "Sergeant Klitch had reasonable articulable suspicion to justify the traffic stop"; "Sergeant Klitch's weapons frisk was appropriate"; and Goodrich's "actions of handing over the cigarette box in combination with his simultaneous statement show clear and unambiguous consent that was freely and voluntarily given." The court also ruled, however, that Goodrich's post-arrest incriminating statements "were made in response to Sergeant Klitch's offer for [Goodrich] to become a confidential informant in exchange for leniency and therefore coerced," and it suppressed those statements.

Following this ruling, Goodrich pled guilty to an amended charge of possession of a controlled substance and reserved the right to appeal the partial denial of his suppression motion. Goodrich timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Goodrich argues the district court erred in partially denying his suppression motion because he contends he did not voluntarily consent to Sergeant Klitch's search of the cigarette box. In response, the State asserts the totality of the circumstances show Goodrich voluntarily confessed the cigarette box contained cocaine and then voluntarily showed Sergeant Klitch the contents of the box.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The

3

State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* Voluntary consent to a search is a well-recognized exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). The State must show by a preponderance of evidence that consent was not the result of duress or coercion, either direct or implied. *Jaborra*, 143 Idaho at 97, 137 P.3d at 484. The voluntariness of an individual's consent is evaluated in light of all the circumstances. *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

A determination of voluntariness is not dependent "on the presence or the absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226. Rather, a court may consider various factors in determining whether consent was freely given. *Id.* at 226-27; s*ee State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006). Some of the factors a court may consider include: (1) the number of officers involved in the confrontation; (2) the location and conditions of the consent, including whether it was at night; (3) whether the police retained the individual's identification; (4) whether the individual was free to leave; and (5) whether the individual knew of his right to refuse consent. *State v. Moran-Soto*, 150 Idaho 175, 180, 244 P.3d 1261, 1266 (Ct. App. 2010); *Garcia*, 143 Idaho at 778, 152 P.3d at 649. While the presence of multiple police officers does not, standing alone, establish coercion and the police are not required to inform the individual that he is free to leave or that he has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances. *State v. Rector*, 144 Idaho 643, 645, 167 P.3d 780, 782 (Ct. App. 2006).

Goodrich does not challenge any of the district court's factual findings as clearly erroneous. Rather, he argues the totality of circumstances show he did not voluntarily consent to the search of the cigarette box. In support, Goodrich relies on the following facts: two uniformed officers were present with their own patrol cars; the traffic stop occurred near midnight "in a relatively empty area of a parking lot"; Sergeant Klitch did not "dispel" Goodrich's "understanding [Sergeant] Klitch gave a demand" to open the box; and Goodrich was

4

detained, never informed he was free to leave, not given his *Miranda*[1] rights, and did not know of his right to refuse consent.

The district court considered these facts, weighed the evidence, and found:

> While the evidence shows [Goodrich] was not free to leave at the time and the encounter took place at night, these are only two factors that weigh in favor of finding [Goodrich] was not making a free and voluntary choice. The atmosphere was not police dominant because there were only two officers that responded to the traffic stop. Also, each officer interacted one-on-one with [Goodrich] and the driver. [Goodrich] was frisked, but he consented to the frisk and *Miranda* warnings were not required at that time because Sergeant Klitch was not interrogating [Goodrich].
>
> The Court is not convinced by [Goodrich's] argument that Sergeant Klitch's phrasing seemed more like a command that [Goodrich] could not refuse. The officer was asking a question. The plain language of Sergeant Klitch's question, "Do you mind . . ." suggests [Goodrich] was able to refuse. . . . Instead of refusing, [Goodrich] began fidgeting with his clothes and reaching into his pocket before responding, "Why do I need to do all this? This is bull sh-t." Approximately five seconds passed before [Goodrich] handed the cigarette box over and said, "Honestly, there's going to be some coke in there. Probably in the bottom of it."
>
> Finally, [Goodrich's] consent is further confirmed by his later statement while in the patrol car. When Sergeant Klitch said, "I actually appreciate your honesty, you know what I mean? You told me the coke was in your pocket[.]" [Goodrich] responded, "I even turned the cigarette pack out to get it." This statement indicates [Goodrich's] voluntariness in responding to Sergeant Klitch's request.
>
> Therefore, [Goodrich's] actions of handing over the cigarette box in combination with his simultaneous statement show clear and unambiguous consent that was freely and voluntarily given.

We conclude substantial evidence supports the district court's findings, including the officers' testimony at the suppression hearing and videos from their body cameras admitted into evidence. Specifically, Sergeant Klitch's request that Goodrich open the cigarette box and Goodrich's conduct of pulling the cigarette box out of his pocket, volunteering "there's going to be some coke in there," and subsequently stating "I even turned the cigarette pack out to get it," is substantial evidence that he consented to the search. Under the totality of circumstances, Goodrich voluntarily consented.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

## IV.

## CONCLUSION

Substantial evidence supports the district court's finding that Goodrich consented to the search of the cigarette box, and the district court did not err in partially denying his suppression motion. We affirm Goodrich's judgment of conviction.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.