**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43257**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 4** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: January 18, 2017** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **LAWRENCE R. LUTTON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Boise County. Hon. Patrick H. Owen, District Judge.

Order withholding judgment for vehicular manslaughter, <u>affirmed</u>.

Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Lawrence R. Lutton appeals from the district court's order withholding judgment for vehicular manslaughter. Specifically, he argues the district court erred in denying Lutton's motion to suppress evidence of his blood alcohol content. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

At around 9 p.m., after enjoying a day at the reservoir with his children and some friends, Lutton began the drive back to town. Lutton drove his sons, ages two and four, in Lutton's two-wheel drive vehicle, following behind his friend's vehicle. At some point on the dirt road leading to the highway, Lutton hit washboard and lost control of his vehicle. The vehicle left the road and went into the reservoir.

Lutton was able to escape the submerging vehicle and rescue his four-year-old son. The boy was not breathing when he was pulled from the water. Lutton's friend, having returned to

1

where Lutton's vehicle left the road, was able to revive the boy by performing CPR. Lutton returned to the water to rescue his two-year-old son who was still strapped inside the submerged vehicle. After unbuckling and freeing him from his car seat, Lutton lost hold of the child. Lutton was unable to find his son in the water despite repeated attempts to locate him. Lutton's friend eventually forced Lutton to exit the water out of concern for Lutton's safety, as he was showing signs of hypothermia. Other people who had stopped to help continued to look for the two-year-old boy.

Believing that Lutton and the four-year-old needed immediate medical treatment, Lutton's friend drove Lutton and his son from the accident site toward the hospital in town. Before they were able to reach the hospital, police officers observed the vehicle speeding with its hazard lights flashing. The officers stopped the vehicle to investigate, with one officer making contact with the driver and the other officer making contact with Lutton in the passenger's seat.

Lutton and his friend told the officers about the crash and the need for medical attention. The officer who spoke with Lutton detected a slight odor of alcohol coming from the vehicle. Lutton was distraught and sobbing, but admitted to having consumed three beers between one and three o'clock that afternoon. Lutton's friend also admitted to drinking earlier in the day. The officers called for an ambulance to transport Lutton and his four-year-old son to the hospital. The officers dispatched an Idaho State Police (ISP) trooper to respond to the hospital to investigate Lutton for possible driving under the influence (DUI). After the ambulance arrived, the other officer spoke with Lutton while he was in the ambulance. The officer did not smell alcohol coming from Lutton's person. After the ambulance departed, the two officers remained at the scene to interview Lutton's friend further before traveling to the hospital themselves.

Although there are differing accounts as to what happened at the hospital, the district court found the following facts. At the hospital, the original responding officers reconnected with Lutton in his treatment room. Lutton was seated on the bed wrapped in a blanket, without clothes. The officer that initially made contact with Lutton in the vehicle continued the investigation, asking Lutton questions about the day's activities and details about the accident. The officer did not detect any odor of alcohol or any other signs of intoxication. The officer did not conduct any sobriety tests. At this time, Lutton was no longer sobbing, did not appear as distraught as he had been earlier, and was able to understand and answer the officer's questions. The officer informed Lutton that an ISP trooper had been called to assist in the investigation and

2

that the trooper would be reading Lutton an advisory form and obtaining a blood sample. When the ISP trooper arrived, the two officers stationed themselves outside the door of Lutton's treatment room.

The trooper read the administrative license suspension advisory form to Lutton. While the trooper spoke with Lutton, the two-year-old boy arrived in the emergency room on a gurney and was placed in an adjacent treatment room. After seeing his son, Lutton was distraught and crying. At no time did the trooper restrict Lutton from seeing his son on the condition that Lutton first complete a blood draw. Lutton subsequently cooperated with a hospital nurse in providing a blood sample. Lutton did not affirmatively object, refuse, or physically resist the blood draw. Lutton was advised of the consequences of refusing the blood draw and agreed to provide a sample. The blood sample showed an alcohol concentration of 0.092. The two-year-old child later died.

The State charged Lutton with vehicular manslaughter, Idaho Code § 18-4006(3)(b), and driving under the influence, I.C. § 18-8004. Lutton moved to suppress the evidence of the warrantless blood draw. The district court denied Lutton's motion on the basis that Lutton impliedly consented to the draw. Pursuant to a plea agreement, Lutton pled guilty to vehicular manslaughter, and the State dismissed the driving under the influence charge. Lutton reserved his right to appeal the district court's denial of his motion to suppress and his motion to reconsider. The district court entered an order withholding judgment, suspended Lutton's driver's license for six months, and placed Lutton on unsupervised probation for a period of four years. Lutton timely appeals the denial of his suppression motion.

## II.

## ANALYSIS

Lutton argues that the district court erred in denying his motion to suppress evidence of his blood alcohol content obtained after a warrantless blood draw. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual

3

inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Requiring individuals to submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17, of the Idaho Constitution. *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014) (citing *Schmerber v. California*, 384 U.S. 757, 767 (1966)). The purpose of Article I, Section 17, is to protect Idaho citizens' reasonable expectation of privacy against governmental intrusion. *Wulff*, 157 Idaho at 418, 337 P.3d at 577. However, because the parties do not base their arguments on the Idaho Constitution, we limit our analysis to the context of the United States Constitution.

Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. *Wulff*, 157 Idaho at 419, 337 P.3d at 578. Searches that fall within one of the well-recognized exceptions to the warrant requirement can overcome the presumption of unreasonableness. *Id.* One such exception is consent. *Id.* The warrant requirement does not apply if the person subjected to the search has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968); *State v. Smith*, 144 Idaho 482, 488, 163 P.3d 1194, 1200 (2007). Consent must be voluntary and not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). A voluntary decision is one that is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth*, 412 U.S. at 225. The voluntariness of an individual's consent is evaluated based upon the totality of the circumstances. *Wulff*, 157 Idaho at 422, 337 P.3d at 581. This analysis requires consideration of subtle coercive police tactics and questions, as well as the subjective state of the party granting consent to search. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). The State bears the burden to prove that consent was voluntary by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

In addition to establishing the consent exception through the actual, voluntary consent of an individual, the State can establish consent through statutorily implied consent. *State v. Rios*, 160 Idaho 262, 266, 371 P.3d 316, 320 (2016) ("[I]mplied consent may satisfy the consent

4

exception to the warrant requirement. Therefore actual consent is not required."). Under Idaho Code § 18-8002, a driver impliedly consents to evidentiary testing, including blood alcohol testing, when that person drives on Idaho roads, and a police officer has reasonable grounds to believe that person has been driving in violation of one of Idaho's DUI statutes. I.C. § 18-8002(1); *Rios*, 160 Idaho at 265, 371 P.3d at 319. However, to be deemed valid, a driver's implied consent must remain voluntary until the point when the evidentiary test is administered. *Rios*, 160 Idaho at 265-66, 371 P.3d at 319-20. Thus, for the implied consent exception to apply (1) the driver must give his or her initial consent voluntarily, and (2) the driver must continue to give voluntary consent through the time of evidentiary testing. *Id.* at 266, 371 P.3d at 320.

In denying Lutton's suppression motion, the district court found that Lutton impliedly consented to the warrantless blood draw. In satisfaction of the first prong of the implied consent analysis, the court found that Lutton was voluntarily driving on Idaho roads and that officers had reasonable grounds to believe Lutton was driving while under the influence. In satisfaction of the second prong, the court found that Lutton's consent to the blood draw remained voluntary.

Lutton argues that the requirements of the implied consent doctrine were not met in this case. He first contends that the police did not have reasonable grounds to believe Lutton was driving while under the influence. He next contends the district court applied the wrong standard in finding that Lutton continued to voluntarily consent to the blood draw. In response, the State argues that, even if the court erred in finding that Lutton impliedly consented to the warrantless blood draw, the court's findings show that Lutton gave actual consent. The State points out that, after assessing the totality of the circumstances, the district court found that Lutton "voluntarily consented to the blood draw." Thus, the State contends that Lutton gave actual, voluntary consent. Because actual consent justifies a warrantless blood draw, any error in finding statutorily implied consent is inconsequential.

Assuming, without deciding, that the district court erred in finding statutorily implied consent, we address the State's contention that Lutton's suppression motion was properly denied on the basis of Lutton giving actual, voluntary consent to the blood draw. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015). Thus, we turn to the record to decide if the district court made sufficient factual findings to support affirmance on the basis that Lutton gave actual consent.

5

In analyzing the second prong of the implied consent analysis, the district court found that, based upon the totality of the circumstances, Lutton's consent remained voluntary throughout the entire encounter. The court made the following factual findings:

> The evidence is clear that [sic] Lutton did not affirmatively object, refuse or physically resist the request for blood draw. To the contrary, he was cooperative. Having observed the witnesses and listened to the testimony, the Court did not find that Lutton was credible when he testified that he was told that he could not refuse and that the blood draw was mandatory. The Court did not find that Lutton was credible when he testified he was told repeatedly that [sic] he could not see his son unless he provided a blood sample. The Court found the contrary testimony of [the state trooper] credible on these same points.
>
> It appears there was a delay of an hour or more between the contact with Lutton at the traffic stop and at the hospital. In that time, Lutton had been assessed and treated by paramedics and hospital staff. While he was certainly and understandably upset and concerned throughout, Lutton was in much better condition at the hospital than he was at the time of the traffic stop. Lutton understood and responded to questioning at the hospital. In the Court's view, Lutton was advised of the consequences of refusing the blood draw, and Lutton agreed to provide a sample. *The Court does not find that the police presence was such as to unduly interfere with Lutton's decision to provide a blood sample.* Under the totality of the circumstances, the Court is persuaded that Lutton was the driver, was properly advised, and did not revoke or withdraw his implied consent, *and he voluntarily consented to the blood draw*.

(emphasis added).

Lutton argues the district erred in finding that Lutton's consent was voluntary. Lutton points to the factual allegations he attested to during the suppression hearing--that officers refused to let Lutton see his son until Lutton gave a blood sample; that he was told to sit down when he attempted to leave the room; that he was forced to urinate in a jar; and that his family and friends were asked to leave and were then prohibited from entering his room. He also points to the testimony of the hospital chaplain--that even she believed Lutton was being held by police. He argues these facts indicate a coercive police presence. Further, he argues that having just gone through a physically and emotionally traumatic event, his subjective state of mind was distraught and vulnerable. He contends that his capacity for self-determination was critically impaired. Lutton argues that the combination of these facts precludes a finding of voluntariness.

Lutton's arguments are unpersuasive in that they ignore the district court's express findings and implicitly urge this Court to reweigh the evidence presented during the suppression hearing. It is well established that we give great deference to the trial court with regard to findings of fact. *Dominguez*, 137 Idaho at 684, 52 P.3d at 328. The trial court is the proper

forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. Even though the evidence may be equivocal and somewhat in dispute, if the trial court's findings of fact are based on reasonable inferences that may be drawn from the record, they will not be disturbed on appeal. *Jaborra*, 143 Idaho at 97, 137 P.3d at 484. Whether consent to search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Id.* Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *Id.* at 98, 137 P.3d at 485.

After review of the record, we conclude that the district court's findings, although disputed by Lutton, are supported by substantial evidence. After hearing the various witnesses testify during the suppression hearing, the district court made express credibility determinations. The district court accepted the testimony of the state trooper as credible, discounting Lutton's testimony on contradictory factual allegations as not credible. The state trooper testified that Lutton was never mandated to provide a blood sample; that Lutton never objected to having his blood drawn; that Lutton was not prohibited from seeing his son until he consented to a blood draw; that Lutton was advised of his right to refuse to provide a sample; and that Lutton said "okay" to having his blood taken. The district court heard a recording of Lutton being questioned by police officers. This recording demonstrated, consistent with the district court's finding, that Lutton was able to understand and respond to police questioning and was cooperative. While the evidence considered by the court was equivocal and disputed, the findings made by the district court are nonetheless supported by substantial evidence. Thus, we cannot conclude that the district court's findings are clearly erroneous.

## III.

## CONCLUSION

Lutton has not demonstrated that the district court erred in denying Lutton's motion to suppress. The district court's finding that Lutton voluntarily consented to the warrantless blood draw is supported by substantial evidence and is not clearly erroneous. Accordingly, we affirm the district court's order withholding judgment.

Judge MELANSON and Judge HUSKEY **CONCUR**.