**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 44644**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Unpublished Opinion No. 644** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  November 16, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **TRAVIS WILLIAM COATS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

Order of the district court denying motion to suppress, <u>affirmed</u>.

Williams, Meservy & Lothspeich, LLP; James C. Meservy, Jerome, for appellant. James C. Meservy argued.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.  Ted S. Tollefson argued.
_____

GRATTON, Chief Judge

Travis William Coats appeals from the district court's judgment of conviction entered upon his conditional guilty plea to operating a motor vehicle while under the influence of an intoxicating substance.  Specifically, Coats challenges the district court's denial of his motion to suppress the test results of a warrantless blood draw.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Coats rear-ended a minivan that was stopped at a red stoplight.  Responding officers observed that Coats was lethargic, his speech was slurred, and he had a difficult time following the officers' directions.  An officer administered field sobriety tests to Coats.  The officers' observations led them to believe that Coats was operating a motor vehicle while under the influence of alcohol or other intoxicating substances.

1

An officer transported Coats to the Twin Falls County Jail and administered a breathalyzer test to Coats. Coats provided two breath samples. The results revealed that Coats had no alcohol in his system. The officer then advised Coats of his *Miranda*[1] rights, and Coats invoked his right to remain silent. The officer then asked Coats if he would be willing to go to the hospital for a blood draw. Coats orally agreed.

The officer transported Coats to the hospital for the blood draw. At the hospital, the officer read the blood draw authorization form aloud to Coats. It read: "I grant permission for my blood to be taken." Coats signed the form. A nurse drew Coats' blood, and the blood was sent to the state forensic lab for testing. The test results revealed that Coats' blood contained the drugs Carisoprodol,[2] Meprobamate, and Diazepam. Ultimately, the State charged Coats with felony DUI, Idaho Code § 18-8005(6).

Coats filed a motion to suppress the statements he made to police after invoking his right to remain silent and the results of the warrantless blood draw. Following a hearing, the district court partially granted Coats' motion and suppressed the statements elicited in violation of *Miranda*. However, the court partially denied the motion and declined to suppress the results of the blood draw. Coats entered a conditional guilty plea and reserved the right to appeal the district court's partial denial of his motion to suppress. The district court entered judgment and imposed a unified eight-year sentence with four years determinate. Coats timely appeals.

## II.

## ANALYSIS

Coats asserts the district court erred in denying his motion to suppress the blood test results from the warrantless blood draw for two reasons. First, he argues he did not give voluntary actual consent to the blood draw, and he argues he revoked implied consent to the blood draw. Second, he argues that the blood draw results were suppressible as the fruit of police misconduct pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963). The State asserts that Coats gave voluntary actual consent for the blood draw, Coats never revoked implied consent, and that the fruit of the poisonous tree doctrine is inapplicable.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Carisoprodol is a muscle relaxant marketed under the brand name Soma.

2

substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Because it is dispositive of this matter, we turn to the question of whether Coats gave voluntary actual consent to the warrantless blood draw. Coats argues that his actual consent was not voluntarily given because the officer engaged in misconduct calculated solely to gain Coats' consent by deceit, and because Coats was in a vulnerable state when he consented. The district court concluded that Coats consented to the blood draw through voluntary actual consent given to the officer. We agree.

The United States Constitution and the Idaho Constitution both prohibit unreasonable searches and seizures of persons or property. U.S. CONST. amend. IV; Idaho CONST. art. I, § 17. Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Warrantless searches are presumptively unreasonable under the Fourth Amendment. *State v. Lutton*, 161 Idaho 556, 560, 388 P.3d 71, 75 (Ct. App. 2017). Therefore, a warrantless blood draw is presumptively unreasonable under the Fourth Amendment. *Missouri v. McNeely*, 569 U.S. 141, (2013); *State v. Wulff*, 157 Idaho 416, 419, 337 P.3d 575, 578 (2014).

The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011). Consent is one such exception to the warrant requirement. *Lutton*, 161 Idaho at 560, 388 P.3d at 75. Consent must be voluntary and not the result of duress or coercion, either direct or implied. *Id.* An individual's consent is involuntary "if his will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). To determine whether a subject's will was overborne in a particular case, the court must assess the totality of all the surrounding circumstances. *Id.* at 226. Accordingly, whether consent was granted voluntarily, or was the product of coercion, is a factual determination to be based upon the surrounding circumstances, accounting for subtly coercive

3

police questions and the possibly vulnerable subjective state of the party from whom consent is elicited. *Schneckloth*, 412 U.S. at 229; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002).

Importantly, the trial court is the proper forum for the "careful sifting of the unique facts and circumstances of each case" necessary in determining voluntariness. *Schneckloth*, 412 U.S. at 233. However, even if the evidence is equivocal and somewhat in dispute, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal since our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *State v. Post*, 98 Idaho 834, 837, 573 P.2d 153, 156 (1978), *overruled on other grounds by State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981); *see also Hansen*, 138 Idaho at 795, 69 P.3d at 1056; *State v. McCall*, 135 Idaho 885, 886, 26 P.3d 1222, 1223 (2001). Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999).

In regard to giving actual consent, the district court found that under the totality of circumstances, "Coats orally consented to the blood draw while in the Twin Falls County Jail" and consented again "some 20-30 minutes after the oral agreement, in writing" by signing the written authorization form. Although the blood draw authorization form was never admitted into evidence, this finding is supported by the preliminary hearing testimony of the arresting officer:

Q.      Again, you indicate that Mr. Coats consented to that blood draw?
A.      Yes, he did.

This finding is also supported by the audio recording that was admitted as Defendant's Exhibit A. The following conversation occurred at the Twin Falls County Jail and can be heard in that recording:

Officer:    Would you be willing to let the hospital draw blood so that we can do a blood test to see what is in your system?
Coats:      Is that necessary?
Officer:    I think you are on something--okay? I think you've taken something, obviously, that is impairing your ability to function.
Coats:      Yeah.
Officer:    And you were driving and you got in an accident. A bad accident. I mean you did a lot of damage. You were lucky that none of the kids in the car were actually injured.
Coats:      Exactly.

4

| Officer: | Okay, so I want to know what caused that because I think there is something in your system that is causing you to act the way you are. I just want to know what that is. There are two ways I can find out. You can tell me . . . . |
|---|---|
| Coats: | I didn't . . . I don't drink. |
| Officer: | We've ruled out alcohol--It wasn't alcohol. I have ruled that out. I am wondering what it was though. Because you told me you don't have any medical issues you are not a diabetic but you can't stand up for longer than three seconds without almost falling over. |
| . . . . | |
| Officer: | So, if we go to the hospital and I ask the nurse to draw your blood, would you be willing to allow her to draw your blood so I can test it to see exactly how much Soma you have in your system[?] |
| Coats: | Yeah. |
| Officer: | You would? Okay. |
| Coats: | That would help me out. |
| Officer: | Well, it would help the situation out for, you know, figuring out what exactly it is. I can't say necessarily it would help you out or help me out. It's just the course of action that we would want to do. Okay? |

Additionally, in that recording, the officer can be heard reading the blood draw authorization form to Coats:

| Officer: | This is saying, "I grant permission for my blood to be taken." If you just put a signature, I can hold it for you. |
|---|---|

Then, Coats can be heard signing the form.

Finally, this finding is supported by the officer's testimony at the motion to suppress hearing:

| Q. | All right. And where did he sign that? |
|---|---|
| A. | He signed the permission for the blood draw in the E.R. at St. Luke's Magic Valley in Twin Falls. |
| . . . . | |
| Q. | Officer, you talked about a document that the defendant signed at the hospital with regards to the blood draw? |
| A. | Yes. |
| Q. | Can you explain that document? |
| A. | Yes. It's a small, if I remember correctly, white piece of paper with red printing on it that comes in the state lab blood draw kit that states that they give . . . . It states that it gives permission for their blood to be drawn. I read that to him, and then he signed it. |
| Q. | All right. And when you read that to him, did you read it to him verbatim? |
| A. | Yes, I did. |
| Q. | And have you listened to the audio recording in this case? |
| A. | Yes, I have. |

5

> Q. And does that audio recording accurately record you reading that document verbatim to the defendant?
>
> A. Yes, it does.
>
> Q. Following your reading of that document, did he sign it?
>
> A. Yes, he did.
>
> Q. And then was the defendant's blood drawn pursuant to his consent?
>
> A. Yes, it was.

Thus, this finding is supported by substantial evidence in the record.

With regard to the voluntariness of Coats' consent, the district court "[found] that Coats was not 'coerced' into consent" since the officer "did not use any [subtly coercive police] tactics here, nor was Coats in a vulnerable subjective state." This finding is supported both by the officer's testimony at the motion to suppress hearing and the audio recording admitted as Defendant's Exhibit A. The discussion between the officer and Coats was conducted in conversational tones. The officer never threatened Coats, and he was not overbearing. The officer made no false assertions. He answered Coats' questions honestly and candidly. When Coats invoked his right to remain silent, the officer verified that Coats had done so. After Coats orally consented, he stated: "[The blood draw] would help me out."[3] On his own volition, the officer clarified by explaining to Coats that the testing would help figure out what was in Coats' system, but that it would not necessarily help Coats. Despite hearing the officer's clarification, Coats traveled to the hospital with the officer and signed the consent form. Furthermore, although Coats' speech was slurred, it is discernible in the recording. Importantly, Coats was cognizant enough to ask the officer questions and to assert his right to remain silent before consenting to the blood draw. Thus, the district court's finding is supported by substantial evidence in the record. Accordingly, we conclude the district court's finding that Coats' gave voluntary actual consent was based on a totality of the circumstances and is supported by substantial evidence in the record.

Because the issue of whether Coats gave voluntary actual consent is dispositive, we need not address Coats' arguments regarding implied consent and the fruit of the poisonous tree.

---

[3] Coats presents this remark in his brief as a question. The district court and the State present this remark as a statement. Whether the remark was a question or a statement is immaterial. The officer's response correctly advised that it would not necessarily help Coats.

## III.

## CONCLUSION

Coats gave voluntary actual consent for the warrantless blood draw. Accordingly, the district court did not err in denying Coats' motion to suppress the test results from the warrantless blood draw.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.